## PEOPLE v. TREICHEL.

1. HOMICIDE—INDICTMENT AND INFORMATION—DEGREE OF MURDER
   OR MANSLAUGHTER MAY BE FOUND.

   In a prosecution for murder, where the information
   charged murder without specifying method or means or
   circumstances, the trial court was not in error in instruct-
   ing the jury that conviction might be had for murder in
   the first or second degree or manslaughter.[1]

2. SAME—DEGREE OF MURDER COMMITTED PERPETRATING BURGLARY
   DEPENDENT ON EVIDENCE—STATUTES.

   Although the statute constitutes murder committed in
   the perpetration of burglary as in the first degree, it does
   not exclude all lesser degrees if the evidence warrants,
   and therefore, under the evidence in this case, the trial
   court was not in error in refusing a requested instruction
   that the jury must find defendants guilty of murder in
   the first degree or not guilty, especially in view of 3
   Comp. Laws 1915, § 15194, requiring the jury to determine
   the degree of murder.[2]

3. CRIMINAL LAW—CONFESSIONS — ADMISSIBILITY — QUESTION FOR
   JURY.

   The admissibility of the confessions of two of the defend-
   ants, where dependent upon questions of fact, held, prop-
   erly submitted to the jury.[3]

4. SAME—EVIDENCE—ADMISSIBILITY OF STATEMENTS BY DEFEND-
   ANTS.

   Although the trial court excluded the confession of one
   of the defendants because of the brutality of the sheriff
   in obtaining it, subsequent statements by said defendant
   to others were not thereby rendered inadmissible as a
   matter of law.[4]

5. SAME—CONFESSION OF ACCOMPLICE ADMISSIBLE ALTHOUGH OB-
   TAINED BY TRICKERY.

   That an accomplice, not on trial, was led to confess by

[1]Homicide, 30 C. J. § 642 (1926 Anno); [2]Id., 29 C. J. § 82 (1926
Anno); [3]Criminal Law, 16 C. J. § 2287; [4]Id., 16 C. J. § 1480.

For authorities discussing the question of conviction of lower
or different degree in prosecution for homicide, see notes in 21
L. R. A. (N. S.) 1; 43 L. R. A. (N. S.) 813.

On effect of statutory declaration that murder committed by
certain means, or in commission of felony, shall be murder in
first degree, upon right of jury to pass upon degree, see notes
in 12 L. R. A. (N. S.) 935; L. R. A. 1916D, 610.

trickery, deceit, brutality or promises, may not be urged by defendants for the purpose of excluding his testimony, since the weight of it, under the circumstances, is for the jury.[5]

6. SAME—TRIAL—STATEMENT OF COURT.

The trial court was not in error in stating, in the presence of the jury, that, if the confessions of two of the defendants were made in the presence of another defendant, the jury might consider such fact for what it was worth against him.[6]

7. SAME—CROSS-EXAMINATION NOT UNDULY RESTRICTED.

Complaint by defendants' counsel that they were unduly restricted in their cross-examination of the people's witnesses, *held*, not sustained by the record.[7]

8. APPEAL AND ERROR—EXCLUSION OF WRITING NOT PREJUDICIAL WHERE CONTENTS REACHED JURY.

Error in the exclusion of a written statement made under oath, before the trial, at the request of defendants' counsel, by one of the people's witnesses, *held*, not reversible, in view of the fact that its contents reached the jury through the asking of questions as to statements therein.[8]

9. CRIMINAL LAW—TRIAL—STATEMENT BY COURT JUSTIFIED.

The trial judge was justified in saying that a question referring to an accomplice as simple-minded was unfair, where there was no evidence to sustain it, in ruling on a motion to strike out the answer.[9]

10. APPEAL AND ERROR—REMARKS OF COURT NOT ERROR.

A statement by the trial judge that witness was able to take care of himself, where obvious by the manner in which he avoided an improper question, *held*, not reversible error.[10]

11. CRIMINAL LAW—EVIDENCE—CONCLUSIONS OF WITNESSES.

Permitting witnesses to state that they made no promises, threats, or inducements in order to obtain defendants' confessions, *held*, not objectionable on the ground that the questions asked called for conclusions or opinions, where not asked in relation to what had been detailed as having been said and done, but to negative anything beyond what had been detailed.[11]

[5]Criminal Law, 16 C. J. §§ 1398 (1926 Anno), 1422, 2288; [6]Id., 16 C. J. § 2103; [7]Id., 17 C. J. § 3560; [8]Id., 17 C. J. § 3681; [9]Id., 16 C. J. § 2101; [10]Id., 17 C. J. § 3637; [11]Id., 16 C. J. § 1532.

12. SAME—BRUTALITY OF OFFICERS IN OBTAINING CONFESSIONS CONDEMNED.

> Actions of the officers of the law who confessed to brutally assaulting prisoners in their custody for the purpose of securing confessions from them are strongly condemned.[12]

Exceptions before judgment from Berrien; White (Charles E.), J.     Submitted October 16, 1924. (Docket No. 178.)     Decided December 10, 1924.

Rheinhold Treichel, Leon Long, and Alvin Keller were convicted of manslaughter.     Affirmed.

*John J. Sterling* and *William H. Andrews*, for appellants.

*Andrew B. Dougherty*, Attorney General, *Charles W. Gore*, Prosecuting Attorney, and *George H. Bookwalter*, Assistant Prosecuting Attorney, for the people.

WIEST, J.     Charged, in common-law form, with the crime of murder, defendants stand convicted of manslaughter, and prosecute review on exceptions before sentence.

Henry Gerling, aged 85, lived alone, in the country near Watervliet, Berrien county.     April 14, 1921, a neighbor, noticing no light in Mr. Gerling's house for many nights, went over and found Mr. Gerling tied with wire, hands and feet, to the head and foot of his bedstead, with his body suspended off the side of the bed and one cheek bone rubbed raw where it touched the floor.     He had been dead so long mortification was present.     On a table lay his spectacles and Bible, underneath set his slippers, while books and papers were scattered about the room, and in another room a bed had been ransacked and in the basement a safe had its combination and hinges knocked off and a hole

---

[12]Criminal Law, 16 C. J. § 1495.

broken in its outer covering.     On the safe lay a small stick of fire wood to which some hair adhered, and by the safe lay a sledge hammer and an iron wedge. "Untie Henry Gerling" was found chalked on a nearby roadside mail box on April 2d, and some distance away on an auction notice on a tree was chalked "Henry Gerling."     Four boys, on March 31, 1921, lived in the vicinity of the Gerling home; Howard Long, then 12 years of age, Leon Long, his brother, 13, Alvin Keller, 13, and Rheinhold Treichel, 14.     In October, 1923, Howard Long was in the jail of Berrien county on another charge, and the sheriff enlisted the services of a boy prisoner to find out what Long knew about the Gerling matter.     The sheriff had several sessions with Long in which he denied all knowledge of the Gerling murder.     In one interview, when Long was seated, the sheriff slapped him.     Long finally confessed and was a witness at the trial for the prosecution.     He testified the three defendants and himself planned the entering of the Gerling house and, on or about March 31, 1921, in the evening, they went to a vacant house across the road from the Gerling home, there waited until the light in the Gerling home was put out, then his brother Leon and the other two boys, taking a sledge hammer with them, went to the Gerling home while he remained on watch and later he went home without seeing the other boys; that he learned from them that they entered the house, found Mr. Gerling in bed, struck him with a small stick of fire wood, tied him with wire to the bedstead, attempted to break open the safe, then went upstairs, heard Mr. Gerling groan and left.     Defendants were arrested and confessed but Treichel's confession was excluded because of the brutality of the sheriff in obtaining it. The sheriff admits he seized Treichel by the hair and rubbed his nose.     The defendants, when arrested, denied their guilt and at the trial repudiated their

confessions, claiming they were induced to make the same through fear, brutality, hope of help and promises.

While impaneling the jury the trial judge stated that, under the information, a conviction might be had for murder in the first or second degree or manslaughter, and at the close of the trial so instructed the jury.

Counsel for defendants strenuously insist this was error, claiming the information charged murder in the first degree, and it was the duty of the trial judge, under the evidence and their written request, to instruct the jury to confine their deliberations to such degree and, if unable to convict of murder in the first degree, they must find defendants not guilty. Counsel claim they are supported in taking this position by many decisions of this court. In this they are in error. The information charged murder without specifying method, or means, or circumstances, and, under the information, murder in either degree, or manslaughter, might be found. This court has repeatedly held, where the charge as laid includes murder in the first degree, and the proofs establish such degree, and no lesser degree, it is not error for the court to instruct the jury that, in order to convict, murder in the first degree must be found. But this court has not held, under a charge like here laid, the court *must* instruct the jury to find murder in the first degree or acquit. Whether such an instruction may be given or not depends upon the evidence. While the statute constitutes murder committed in the perpetration of burglary as in the first degree, it does not exclude all lesser degrees if the evidence warrants.

In many cases such a holding as here asked would make it extremely hazardous for the people in laying the charge. Suppose the charge is murder in the second degree, and the proofs show murder in the

first degree, must there be an acquittal? This information charged murder in the first and second degrees, and this was inclusive of manslaughter. The evidence left it open for the jury to find defendants guilty of manslaughter.

While Mr. Gerling was wired to his bedstead during the course of a burglary it is apparent he was not then killed for he rolled off the bed. How long he lay unconscious before he rolled off the bed, and how long he lived after he rolled off no one knows. Suppose the jury found, in accordance with the testimony of the undertaker who washed the body of the deceased, there was no bruise except where the cheek bone rubbed on the floor, then they would have had the case of three boys tying the old gentleman in bed and leaving him there alive and endeavoring to incite some one to go and untie him. Conceding the verdict might have been for murder in the first degree, because death was occasioned by act committed in the perpetration of a burglary, was such a verdict the only one permissible? We cannot so hold. We think the evidence left the question of degree and the included crime of manslaughter to the jury and the court avoided instead of committed error in so submitting it. In *People* v. *Utter*, 217 Mich. 74, we held:

"A simple information charging the common-law essentials of murder may be laid, and the jury convict of any degree which the proof establishes."

The statute, 3 Comp. Laws 1915, § 15194, requires the jury to determine the degree of murder.

Whether the confessions of Leon Long and Alvin Keller could be considered by the jury, depended upon determination of questions of fact, and the court very properly left such questions to the jury, giving full instructions as to applicable law. The same is true of statements made by defendants to others after their

confessions.    In the case of defendant Treichel the
court excluded his confession, but this did not render
subsequent statements by him to others inadmissible
as a matter of law.    Whether for consideration by the
jury or not depended upon previous threats, violence,
promises or improper inducement and continuing
operation thereof.    The rule of guidance was care-
fully given to the jury.    Defendants may not urge the
exclusion of the testimony of Howard Long on the
ground he was led to confess by trickery, deceit,
brutality or promises.    He was not on trial.    Methods
and means employed to get him to confess went to the
jury along with his testimony, and it was for the jury
to say, under the circumstances, what weight, if any,
they would give to what he said in court.

The court was not in error in stating, in the presence
of the jury, that, if the confessions of Leon Long and
Alvin Keller were made in the presence of defend-
ant Treichel, the jury might consider such fact, for
what it was worth, against such defendant.

Counsel insist they were unfairly restricted in their
cross-examination of witnesses for the people.    This
record has been carefully read and discloses the court
permitted lengthy cross-examinations and we dis-
cover no reversible error in restrictions applied by the
court.

The sheriff's "stool pigeon," Cecil Hebert, employed
to work on Howard Long, made a statement, under
oath, before the trial, at the request of one of the
counsel for defendants.    Called as a witness by the
prosecution, on cross-examination he was asked about
this statement and testified it was untrue.    Thereupon
counsel offered the statement in evidence and it was
excluded, the court holding the witness might be asked
specifically about each statement therein, but the
writing itself was not admissible.    The record dis-
closes the witness was asked, practically paragraph by

paragraph, about his statements in the writing.    We think the writing was admissible but inasmuch as the contents thereof reached the jury there was no reversible error in the exclusion of the paper.    During the course of the cross-examination of Sheriff Bridgman, the following occurred:

"*Q.* So you entered into a scheme with Cecil Hebert to entrap and lie and so deceive this little simpleminded Howard Long, did you not?

"*A.* If you call him that.

"*Q.* Yes or not?

"*A.* Yes, I didn't say—he is not simple-minded.

"*Mr. Gore:* There is no evidence he is simple-minded except by counsel.    I move that description be struck from the question.

"*The Court:* The sheriff answered.

"*Mr. Gore:* It is not fair cross-examination either to brand a witness without any evidence of it.

"*The Court:* It is answered.    I don't think it was fair either.    The sheriff is able to take care of himself.

"*Mr. Sterling:* I take exception to the statement of the court in that regard.

"*The Court:* I do not think that question was fair, Mr. Sterling.

"*Mr. Sterling:* In what particular is it not fair?

"*The Court:* Wherein you stated the boy was a simple-minded boy.    There is not anything to warrant such a statement.

"*Mr. Sterling:* It is a question of fact.

"*The Court:* It is not for counsel to testify."

It is said:

"Bridgman was not only a hostile witness but an unruly and ungovernable one.    He repeatedly evaded the questions asked.    He replied many times by asking a question himself.    A reading of his cross-examination will disclose that he was not required by the court to answer any question except in a manner he pleased.    Many of his answers were not responsive, yet counsel obtained no assistance from the court."

And it is claimed the attitude of the trial court is

clearly disclosed by the above quotation from the record. It is further said:

"His unwarranted statement in the hearing of the jury that counsel's question, propounded to Bridgman, was unfair must have influenced the jury against respondents, and the court's positive assertion that 'the sheriff is able to take care of himself' was clearly prejudicial to respondents."

We think counsel unduly exercised. The question was improper and the witness was shrewd enough to avoid the unwarranted implication. We think the trial judge was justified in saying it was unfair. It was apparent the witness was able to take care of himself, and a mere statement of the obvious was not in this instance reversible error.

Howard Long, on direct-examination, testified that he and the three defendants broke and entered the house of Mr. Fisher, but on motion the answer was struck out so far as it concerned Leon Long and Treichel. If there was any error in leaving the answer as to Alvin Keller, and harm to the other two defendants, because of the asking, and not corrected by striking out, subsequent examination into the whole matter when defendants were witnesses rendered the matter complained of harmless.

It is claimed there was error in permitting witnesses to state they made no promises, threats or inducements, nor abused the defendants Long and Keller in order to obtain their confessions, because such questions called for the conclusions or opinions of the witnesses. The witnesses were asked what was said and done. The questions complained of did not call for the opinions of the witnesses in relation to what was said or done but to negative anything beyond what they had detailed and this was proper.

We find no reversible error in the closing argument of the prosecuting attorney. When he got over the traces the court very promptly put him back.

The other errors alleged have been considered, have no merit and do not call for discussion.

In the course of the opinion we have made passing mention of the brutality practiced by Sheriff Bridgman upon Howard Long and Rheinhold Treichel. With such confessed breach of official obligation and violation of rights of prisoners before us, we feel we would be remiss in duty if we failed to condemn in plain language such misconduct. To say the acts were cowardly and brutal will not suffice, for this does not adequately cover the grave breach of official obligation committed. Slapping one small boy and seizing another by his hair while rubbing his nose, constituted assaults and batteries, committed without justification or excuse, upon prisoners in the custody of the law, by an officer of the law. Such acts disgrace an offender, violate the law, are degrading to prisoners and obnoxious to the administration of justice.

We find no reversible error and the convictions are affirmed, and the circuit court advised to proceed to judgment.

MCDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred. CLARK, C. J., did not sit.