## PEOPLE *v.* COLLINS.

### OPINION OF THE COURT.

**1. CRIMINAL LAW—WAIVER—GUILTY PLEA—APPEAL AND ERROR.**

Error in the formal charge lodged against a defendant in a criminal prosecution is procedural only and it is waived by the entry of a guilty plea to the charge.

**2. SAME—PROCEDURAL ERROR—MISCARRIAGE OF JUSTICE.**

Any procedural error in a criminal case which does not result in a miscarriage of justice is not ground for a new trial or reversal of conviction (CL 1948, § 769.26; GCR 1963, 529).

**3. SAME—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—GUILTY PLEA—MISCARRIAGE OF JUSTICE.**

New trial or reversal will not be accorded defendants who pleaded guilty to reduced charge of second-degree murder in a prosecution for first-degree murder in perpetration of a robbery, because the plea has not resulted in a miscarriage of justice, since such error as there may have been is procedural only and one of which only the people may complain (CL 1948, §§ 750.316, 750.317).

---

### REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 495.
[2, 3] 5 Am Jur 2d, Appeal and Error § 778.
[4] 27 Am Jur, Indictments and Informations § 187.
[5] 21 Am Jur 2d, Criminal Law § 218.
[6] 5 Am Jur 2d, Appeal and Error § 545; 27 Am Jur, Indictments and Informations § 187.
[7–9] 21 Am Jur 2d, Criminal Law §§ 495, 496.
[10] 21 Am Jur 2d, Criminal Law § 124.
[11] 53 Am Jur, Trial § 286.
[12, 14] 21 Am Jur 2d, Criminal Law § 492.
[13] 53 Am Jur, Trial § 747.

Separate Opinion.

Black, J.

4. Appeal and Error—Amended Information—Criminal Law— Homicide—Motions.

> Claim of defendants that trial court committed reversible error by granting prosecutor's motion to amend the information to charge second-degree murder rather than first-degree murder held, without merit, where defendants' counsel supported unreservedly the prosecutor's motion and then stood by their sides when each defendant pleaded guilty of second-degree murder (CL 1948, §§ 750.316, 750.317).

5. Criminal Law—Justice.

> At the present time in this country there is more danger that criminals will escape justice than that they will be subjected to tyranny.

6. Appeal and Error—Saving Question for Review—Motions— Criminal Law—Homicide.

> Acts of defendants, charged with first-degree murder, and their counsel, in supporting prosecutor's motion to amend the information by setting forth the reduced charges of second-degree murder, their readiness to plead to the reduced charge upon and with the advice of counsel, their failure, when their motions to vacate plea and set aside conviction were presented in circuit, to raise the question of whether the trial court erred by consenting to a motion to amend the information when the evidence did not warrant such amendment, and their omission to raise that question at any time in circuit court, left the Court of Appeals with no meritorious question open for review except on motion of the Court itself (CL 1948, §§ 750.316, 750.317).

7. Homicide — Criminal Law — Guilty Plea — Felony Murder — Robbery.

> Guilty pleas of second-degree murder by defendants provided all the evidence that was necessary for application of the rule that although the statute constitutes murder committed in the perpetration of robbery as murder in the first degree, it does not exclude all lesser degrees if the evidence warrants (CL 1948, §§ 750.316, 750.317).

8. Criminal Law—Guilty Plea—Merger.

> An accused, when he voluntarily pleads guilty to a charge set forth in the people's information and his plea is accepted by the court, admits the charge as laid, provides all evidence

*requisite to sentencing, and thereby waives all previously available objections to the proceedings which led up to and became merged in the legal result of his plea.*

9. SAME—PLEA OF GUILTY—CONVICTION.

*A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction.*

DISSENTING OPINION.

T. M. KAVANAGH, SOURIS, and ADAMS, JJ.

10. CRIMINAL LAW—ACCESSORIES AND PRINCIPALS—STATUTES.

*The distinction between accessories and principals to crimes has been abolished by statute (CL 1948, § 767.39).*

11. SAME—COMMON-LAW MURDER—INFORMATION.

*A simple information charging the common-law essentials of murder may be laid, and the jury may convict of any degree which the proof establishes.*

12. SAME—ACCEPTANCE OF PLEA OF GUILTY TO SECOND-DEGREE MURDER—FIRST-DEGREE MURDER.

*Acceptance of plea of guilty of two defendants to charge of second-degree murder in prosecution for murder committed during armed robbery of store in which a third accomplice killed an employee of the store owner* held, *error, where record shows that if the two were guilty of any murder it would be murder in the first degree (CL 1948, §§ 750.316, 750.317).*

DISSENTING OPINION.

T. M. KAVANAGH and ADAMS, JJ.

13. CRIMINAL LAW—PUBLIC POLICY.

*It is contrary to public policy to have anyone imprisoned who is not clearly guilty of the precise crime charged against him.*

14. SAME—PLEA OF GUILTY.

*A judge may not allow a defendant to plead guilty to a crime of which he cannot be guilty under the facts and the law.*

Appeal from an order of Court of Appeals, Division 2; Quinn, P. J., T. G. Kavanagh and McGregor, JJ., denying leave to take delayed appeal from

Genesee, Newblatt (Stewart A.), J. Submitted December 7, 1967. (Calendar No. 47, Docket No. 51,626.) Decided March 4, 1968.

Alfred Collins and Eddie Collins pleaded guilty and were convicted of second-degree murder. Motions to vacate pleas, set aside convictions, and for new trial denied. Application for delayed appeal to the Court of Appeals denied. Defendants appeal on leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, and *Donald A. Kuebler* and *Paul G. Miller, Jr.,* Assistant Prosecuting Attorneys, for the people.

*Perlman & Garber,* for defendants.

BRENNAN, J. Both defendants in this case were represented by attorneys when they appeared in court on January 9, 1963. At that time, there was a discussion between counsel and the court about the legal question of whether these defendants could properly be charged with second-degree murder. The prosecutor moved an amended information be filed, charging these defendants with second-degree murder. Counsel for both of these defendants joined in the prosecutor's motion to so amend the information. The court permitted the information to be amended, and thereupon accepted pleas of guilty from both defendants upon the amended charge. Defendants now claim that they were not guilty of second-degree murder. They claim that they should have been charged with first-degree murder. They claim that the homicide in this case was committed in the process of the commission of an armed

robbery, and that therefore, under CL 1948, § 750-
.316 (Stat Ann 1954 Rev § 28.548), the murder is
defined as murder of the first degree.

Even if appellants' stated contention were sound,
which we need not determine, the result would have
to be the same. An error (if any) in the formal
charge lodged against a defendant is procedural
only. It is waived by the entry of a plea thereto.
Furthermore, this Court will not regard as the
basis for a new trial or reversal of a conviction any
procedural error which does not result in a mis-
carriage of justice. GCR 1963, 529; CL 1948, § 769-
.26.*

If there is any miscarriage of justice, under these
circumstances it can only be one in which the people
of the State of Michigan have exacted an insufficient
penalty. Putting it another way, if there has been,
under these circumstances, a miscarriage of justice,
it is a miscarriage which ran to the benefit of the
defendants and to the detriment of the people. Of
such a miscarriage of justice, only the people can
complain.

Court of Appeals order affirmed.

DETHMERS, C. J., and KELLY, BLACK, and O'HARA,
JJ., concurred with BRENNAN, J.

BLACK, J. (*concurring*). The guilty pleas defend-
ants belatedly attack were entered with every in-
dicium of "plea agreements."[1] After the trial began

---

* "Sec. 26. No judgment or verdict shall be set aside or re-
versed or a new trial be granted by any court of this State in any
criminal case, on the ground of misdirection of the jury, or the
improper admission or rejection of evidence, or for error as to
any matter of pleading or procedure, unless in the opinion of the
court, after an examination of the entire cause, it shall affirmatively
appear that the error complained of has resulted in a miscarriage
of justice."

[1] See part III, "Plea Discussions and Plea Agreements," set forth
starting on page 60 of the tentative draft of the American Bar As-

in January of 1963 and the jurors were selected and
sworn, the prosecutor moved as presently quoted
for leave to amend by informing the court of murder
of the second degree[2] rather than murder of the first
degree.[3] Each defendant, aided by his own mani-
festly competent counsel, succeeded by his agree-
ment and the aforesaid motion in avoiding the risk
of a mandatory life sentence. Although such coun-
sel unreservedly supported the prosecutor's motion
and then stood by their clients' sides when each
pleaded guilty of second-degree murder and later
when each was sentenced, the two defendants (repre-
sented by new counsel) now would have us find that
the circuit court erred reversibly in granting the
prosecutor's motion and in accepting such guilty
pleas.

The allegation of error is wholly without merit.
Besides, it was eagerly waived below. Some day,
surely, this Court will put an end to such publicly
expensive sport in and with the criminal courts of
Michigan. But that end is now not in sight. All
we can do presently is write and record our separate
convictions. Mine appear below, influenced confess-
edly by the wholly undenied fact that both defend-
ants joined the actual assassin (one James Willie
Armstrong) in planning the armed robbery of a
small grocery store. In the course of that successful
robbery the proprietress, Ann Kelush, was brutally
shot and left dying in the store.

"At the present time in this country there is more
danger that criminals will escape justice than that

sociation Project on Minimum Standards for Criminal Justice, issued
February 1967 from the Office of Criminal Justice Project, Institute
of Judicial Administration, 33 Washington Square West, New York,
New York; also pages 1, 2 and 3 of the December 1967 supplemental
pamphlet, setting forth amendments recommended by the so-called
Lumbard Committee.

[2] CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549).—Reporter.
[3] CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).—Reporter.

they will be subjected to tyranny."[4]  Some immediate restraint is due of today's most incredible juristic doctrine, that criminal justice has been set up for the benefit alone of those who, having been accused and convicted of felony according to the forms of law, may thereafter tap the courts incessantly for determination of afterwitted allegations of error, the more and more visible design of which is precedential erosion of society's right to defend herself against criminal disorder.

January 9, 1963 the two defendants, represented respectively by attorneys Thomas Stipes and Robert Norgren, appeared before the trial court with the prosecuting attorney.  The proceedings opened with motion of the prosecutor:

"At this time, if the court please, the people move the court for permission to file an amended information in this matter, charging respondent[5] Eddie Collins and Alfred Collins with the crime of murder in the second degree.

"In the event that this motion is granted, I have been informed by their respective counsels [sic] that these two defendants wish to enter pleas of guilty to the charge."

There is no need to detail further the proceedings which then ensued.  The trial judge considered the motion carefully and at length on the record.  Having granted it, the pleas of both defendants were submitted, considered, and granted, similarly at length on the record.  Both defense counsel were present throughout the hearing and took prominent part in the conduct thereof.  To say that the record

---

[4] This passage was written 60 odd years ago by Mr. Justice Holmes, dissenting in *Kepner* v. *United States* (1904), 195 US 100, 134 (24 S Ct 797, 806, 49 L ed 114, 126).  Today, in America, reutterance thereof as here is so much tragic understatement.

[5] GCR 1963, 201.1, 785.1 require that parties be designated as plaintiff or defendant.—REPORTER.

does not show voluntariness of pleading in each instance is to deny the fully communicated reality thereof and subvert the purpose of providing counsel for accused persons at public expense.

February 1, 1963, both defendants appeared before the court with counsel. Another careful record was made. Defendant Alfred Collins was sentenced to "not less than 23 nor more than 40 years." Defendant Eddie Collins was sentenced to "not less than 11-1/2 nor more than 23 years."

The next event shown in the appendices was the filing, in February of 1965, of motions by new counsel for the defendants to set aside their convictions. These reasons and no others were assigned:

"1. The plea of guilty heretofore entered in this cause was not voluntarily and understandingly made.

"2. In view of the complex issues of law and fact, the examination of the respondent at the time of such plea was not sufficient to determine whether or not the respondent was guilty of any crime."

June 15, 1965 the trial judge filed an opinion denying both motions to set aside conviction. Following reference to and quotation of GCR 1963, 785.3(2),[6] the opinion reads connectedly to conclusion as follows:

"It is to be noted the following facts in addition to others revealed by the records.

"1. Both defendants were represented by counsel at all pertinent times;

"2. That the pleas were entered only after impaneling of the jury;

---

[6] If, after the defendants through counsel advised the judge that they wished to plead to the amended information, the procedure followed by Judge Newblatt failed in some finical respect to comply with rule 785.3 as that rule stood in January of 1963, the case clearly is one for application both of GCR 529.1 and GCR 785.3(4). The latter read then and reads now: "This rule is mandatory but failure to comply therewith shall not be considered jurisdictional."

"3. That testimony was taken as to the third respondent to determine the degree of homicide inasmuch as the third respondent had pleaded guilty to an open charge of murder;

"4. That the record indicates a thorough pre-sentence inquiry by the court.

"Also to be noted is that the so-called protestations of innocence referred to by counsel as having been made by the respondents Eddie Collins and Alfred Collins were then interpreted by the court as being protestations of their innocence of holding the intent to kill Mrs. Kelush. And surely this is true. But when they participated in the fashion that they admitted in an armed robbery during which the victim was slain, lack of specific intent that such a slaying be committed is not a defense. From the statements of counsel made in their presence and in the inquiry and in the investigation made by the court including the presentence investigation, the protestations of innocence only had to do with their claimed innocence of intending to kill or in planning the killing of Mrs. Kelush.

"It is to be noted further that the respondent did not seek their pleas to be withdrawn and statements were made by their counsel in their presence which established not only their guilt, but that their pleas were voluntary.

"The court's examination of the accused complied with the rule. Although it is true that a more thorough interrogation as to the facts of the events would be preferable (and if the plea were to be taken again, such would be the procedure followed by this court), still there was compliance with the rule and there is nothing in the record to establish that the pleas were not completely voluntary or that they were not knowingly or understandingly made or that they were made as a result of undue influence, compulsion, duress, fraud or under a promise of leniency.

"Accordingly, the motions are denied. Prevailing counsel should tender an order for signature of the court forthwith."

An order denying such motions entered in circuit June 28, 1965.

January 13, 1966 the defendants, represented by such new counsel, raised for the first time the main question sought now to be reviewed. That was done by application to the Court of Appeals for leave to take delayed appeal from the order of June 28, 1965. The question was raised in the application as follows:

"B. The lower court erroneously consented to a motion by the prosecution to amend the information and charge the appellants with the crime of murder in the second degree, when the evidence did not warrant such amendment."

April 21, 1966, Division 1 of the Court of Appeals denied defendants' application by summary order. We granted defendants' application for leave to appeal December 29, 1966.

The acts of defendants and their counsel in openly supporting the prosecutor's motion to amend the informations; defendants' understandable readiness to plead to the reduced charges upon and with the advice of such counsel; their failure to raise the question they would now review when their motions to vacate plea and set aside conviction were presented in circuit, and their omission to raise that question at any time in circuit; all this left the Court of Appeals with no meritorious question for review except on motion of the Court itself. See to the point *People* v. *Sanford,* 252 Mich 240, 248, 250, 253; *People* v. *Foley,* 299 Mich 358, 360, 361; *People* v. *Millman,* 306 Mich 182, 189; *In re Pardee,* 327 Mich 13, 18; *People* v. *Banning,* 329 Mich 1, 7; *People* v. *Barmore,* 368 Mich 26, 31.

That which the above foreshadows is not meant to leave undecided the hypertechnical question defendants raise as to applicability of the rule of *People* v. *Treichel,* 229 Mich 303; a rule which this Court followed and applied later in *People* v. *Andrus,* 331 Mich 535, 543, 545. I agree with the prosecuting attorney that *Treichel* authorized what everyone at the time, the trial judge, prosecutor, and defense counsel included, deemed proper as well as commendable procedure. As for the present cavil, that the rule of *Treichel* is operative only "if the evidence warrants" and that no evidence was received in circuit warranting the amendment and pleas thereunder, it is sufficient to say that the unreserved and fully safeguarded guilty pleas *of both defendants provided all the evidence that was requisite to application of Treichel's rule.* When an accused voluntarily pleads guilty to a charge set forth in the people's information and his plea is accepted duly by the court, he admits the charge as laid, provides all evidence requisite to sentencing,[7] and thereby waives all previously available objections to the proceedings which led up to and became merged in the legal result of his plea. This is doubly true when counsel attends him throughout such proceedings.

An appropriately terminal comment upon criminal appeals like this one was written long ago by Bentham:

---

[7] "A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound. *United States* v. *Bayaud* (CC), 23 Fed 721." *Kercheval* v. *United States,* 274 US 220, 223, 224 (47 S Ct 582, 583, 71 L ed 1009, 1012).

"If rogues did but know all the pains that the law has taken for their benefit, honest men would have nothing left they could call their own."[8]

The rogues know now, Jeremy. And you are well assured that the honest are fast beginning to understand. Ann Kelush learned from rogues and not from on high that she could not even call her life her own.

I vote to affirm.

T. M. Kavanagh, J. (*dissenting*). Defendants are serving terms in prison as a result of guilty pleas entered on January 9, 1963, to a charge of second-degree murder.

On February 15, 1965, defendants filed with the trial court motions to vacate their pleas and set aside their convictions and requested a new trial. The motions were denied by the circuit judge.

An application for leave to appeal to the Court of Appeals was denied on April 21, 1966, for lack of a meritorious question for review. This Court on December 29, 1966, granted defendants' application for leave to appeal. 378 Mich 745.

Defendants and one James Armstrong were charged with first-degree murder, pursuant to the statute[1] which permits such a charge where a killing results during armed robbery. The participant James Armstrong, who actually robbed a store and killed one of the employees, pled guilty to the charge of first-degree murder.

After Armstrong pled guilty on January 9, 1963, the prosecuting attorney moved to amend the information filed against the two defendants herein so as to change the charge from first- to second-

---

[8] "The Works of Jeremy Bentham, published under the superintendence of his executor John Bowring, Edinburgh 1843" (Vol. 6, page 205).

[1] CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).

degree murder. This amendment was concurred in by the defense counsel and the trial judge. To this second-degree murder charge defendants pled guilty and were sentenced.

Defendants contend that the trial court erred in accepting their pleas of guilty to murder in the second degree, arguing they could only be guilty of murder in the first degree or guilty of no crime at all. CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548) reads as follows:

"All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, *or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery or burglary, shall be murder of the first degree,* and shall be punished by solitary confinement at hard labor in the State prison for life." (Emphasis supplied.)

CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549) reads as follows:

*"All other kinds of murder* shall be murder of the second degree, and shall be punished by imprisonment in the State prison for life, or any term of years, in the discretion of the court trying the same." (Emphasis supplied.)

The distinction between accessories and principals to crimes has been abolished in Michigan. CL 1948, § 767.39 (Stat Ann 1954 Rev § 28.979). This statute reads as follows:

"Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or *procures, counsels, aids, or abets* in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." (Emphasis supplied.)

The amended information for murder in the second degree pursuant to CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549) was filed January 9, 1963, and read as follows:

"Be informed that Eddie Collins and Alfred Collins, heretofore, to wit: on or about the 23rd day of June, in the year 1962, at the city of Flint, in said Genesee county, feloniously, unlawfully, but not with premeditated and calculated malice, did kill and murder one Ann Kelush, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

The second contention of defendants is that the pleas of guilty were not made freely, understandingly and voluntarily, without undue influence, compulsion or duress and without a promise of leniency, as required by GCR 1963, 785.3, and therefore their pleas of guilty should have been set aside and a new trial ordered.

Defendants' third contention is that the trial court erred in convicting the defendant Eddie Collins of a crime in which he was not a participant.

The trial court before permitting the amended information to be filed, and before accepting the pleas of guilty, discussed with the prosecuting attorney the legal questions involved. He concluded that, in reliance upon the cases of *People* v. *Treichel,* 229 Mich 303, and *People* v. *Wright,* 315 Mich 81, he would permit the filing of the amended information and accept the pleas.

The language in *People* v. *Treichel, supra,* relied upon by the trial court, which the court believed authorized it to accept the second-degree murder plea, is as follows (p 307):

"While the statute constitutes murder committed in the perpetration of burglary as in the first degree,

it does not exclude all lesser degrees *if the evidence warrants.*"    (Emphasis supplied.)

In *Treichel* defendants contended the trial court should have instructed the jury to confine their deliberations to first-degree murder and, if unable to convict of murder in the first degree, they must find defendants not guilty.  Of this Justice WIEST said (p 307):

"The information charged murder without specifying method, or means, or circumstances, and, under the information, murder in either degree, or manslaughter, might be found."

Justice WIEST further stated (p 308):

"We think the evidence left the question of degree and the included crime of manslaughter to the jury and the court avoided instead of committed error in so submitting it.  In *People* v. *Utter,* 217 Mich 74, we held (p 86):

" 'A simple information charging the common-law essentials of murder may be laid, and the jury convict of any degree which the proof establishes.' "

We note the information in the instant case charged statutory second-degree murder rather than common-law murder.  Therefore, the *Treichel Case, supra,* and other cases charging common-law murder do not apply in this case.

We consider first the acts of defendant Alfred Collins to determine whether the evidence against him warrants a conviction of second-degree murder.

Alfred's participation was summed up by the trial judge at the sentencing of this defendant and, if true, indicates first-degree murder:

"You conceived, planned and urged the commission of this offense.  I am convinced that James was chosen for the actual holdup because his identity

was not as well known as yours, he having arrived only about three weeks before from Terrill, Arkansas. He was furnished with the gun by you. When James lost his nerve at the Koenig Market, he was by encouragement or even coercion made to continue to the Kelush Market to continue the plan to hold up a store and get some money.

"When the crime was complete and Mrs. Kelush was dead on the floor of the store, you took $26 of the $30 and gave $4 back to Armstrong and then you even turned your back on Armstrong and gave him no aid after you discovered that something had happened.

"My conclusion is that without you this crime would never have occurred; and at all times, from the time of the formation of the plan until its execution at the Kelush Market, it was you who kept the plan going.

"My opinion is that moral guilt is greater in you than it is on James Willie Armstrong, the man who pulled the trigger."

In the case of *People v. Repke,* 103 Mich 459, Justice Long, writing for the Court, said (p 470):

"The verdict of the jury in the present case is in form that of murder in the first degree, and the direction of the court that they must so find, or acquit the respondent, was proper under the evidence. Any other instruction than this, under the facts and circumstances shown, would have been very improper, as there was no evidence warranting a different direction, and no circumstances which would lessen the degree. It was a willful, deliberate murder, perpetrated by lying in wait, and the statute itself fixes the degree."

In *People v. Nunn,* 120 Mich 530, Justice Long, again writing for the Court, said (p 535):

"If the respondent was guilty at all, it was of murder in the first degree, and nothing short of

that. The jury were left to determine his guilt or innocence, and the court properly instructed them that, if they found him guilty, it must be of murder in the first degree."

In *People* v. *Utter,* 217 Mich 74, the defendant was charged with first-degree murder for a homicide committed in the perpetration of a robbery. Proofs were confined to that crime and the Court held that no reasonable inference of any other degree of murder could be drawn. The Court held there was no error in the charge to the jury—that their verdict should be murder in the first degree or not guilty— stating (p 86):

"While murder is defined by statute in this State, and the killing of a human being under specified circumstances made murder in the first degree, it also includes the common-law definition and, where appropriate, a simple information charging the common-law essentials of murder may be laid, and the jury convict of any degree which the proof establishes."

The Court further stated, after discussing holdings of other jurisdictions (p 88):

"While the authorities in other jurisdictions are not entirely harmonious upon this question we think sound reasoning supports the foregoing views, to which this Court is in effect committed. Defendant was charged with statutory murder, committed by acts and under circumstances declared by statutory definition to constitute murder in the first degree, to which the testimony was confined with no evidence from which a reasonable inference of any other degree could be drawn."

Justice KELLY, writing for this Court, in *People* v. *Hearn,* 354 Mich 468, examined many of our earlier cases, including some of those mentioned above, and concluded (p 474):

"There were no reasonable grounds for the jury to find defendant guilty of a lesser degree, and there was a total absence of evidence to support the theory that defendant was guilty of the included offenses rather than murder in the first degree."

He held that the trial court did not err in refusing to charge as to included offenses.

Justice Dethmers wrote for the Court in *People v. Dupuis,* 371 Mich 395, also reviewing the early cases, including the *Hearn Case. Dupuis* was a case where defendant was charged under the felony-murder statute[2] when he committed a homicide while in the perpetration of a robbery. Justice Dethmers held that since the charge against defendant was murder in the first degree, the jury's announced verdict of "guilty as charged" was a proper verdict. The failure of the jury to determine the degree pursuant to the statute was not error as the latter part of the statute defined as first-degree murder all murder committed in the perpetration of a robbery.

From the summary of the trial judge we conclude that the defendant Alfred Collins, if guilty of any murder, was guilty of murder in the first degree. We hold that the trial court erred in accepting his plea of guilty to murder in the second degree.

We now turn to the acts of defendant Eddie Collins. Quoting from the record on the sentencing of this defendant, a statement was made by Mr. Norgren, who was appointed counsel for Eddie Collins, which reads in part as follows:

"Armstrong in particular, who was the trigger-man, and who faced a mandatory life imprisonment sentence, of course, had nothing to lose in his statements, of course, both before and after sentencing, but I would like to quote from his statement that he

---

[2] Homicide committed in perpetration of one of the enumerated felonies.  CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).

made to the police after he was picked up and this was made on June 27, 1962, on page 4 of that particular statement. This reference was to the events preceding the holdup when Alfred and Armstrong were in the apartment planning this particular robbery and he was asked this question:

" 'Was there any conversation with Eddie Collins relative to this holdup that was to take place?' and the answer was: 'No.'

"Then later on he was asked: 'What was Eddie's part supposed to be?'

" 'Nothing. He just went. He was just in the car.' "

Of this and other statements the trial court said:

"What Mr. Norgren has said about your participation and degree of participation is certainly borne out in the entire case; it's borne out by the probation department report; it's borne out completely.

"It's unfortunate that you do have the passive personality that you have. It's unfortunate in the sense that you were led into this, and this, of course, I think increases the degree of moral guilt attached to your brother Alfred; this is the older brother, and the older brother, with a dominant personality, who pulled you into this offense. This, of course, is an additional factor to be weighed and was weighed in the sentence imposed upon Alfred, that which Alfred has subjected you to by virtue of his inconsideration and his lack of respect for the law. You went along; but according to all the evidence in the case, *did not actively participate;* and as Mr. Norgren says, I do not know whether you would have actively participated had you been asked, but your degree of guilt is certainly much less than Alfred's." (Emphasis supplied.)

We conclude on this record that Eddie Collins could not be guilty of second-degree murder, and therefore the trial court erred in accepting his plea

of guilty. However, if it is found that he procured, counseled, aided or abetted in the commission of this crime, he is guilty of first-degree murder; if it is not so found, he is guilty of no crime.

A new trial should be granted in each case, so we need not discuss the other issues raised on appeal.

The judgments of conviction should be reversed and set aside and new trials granted.

Souris and Adams, JJ., concurred with T. M. Kavanagh, J.

Adams, J. (*dissenting*). I agree with Justice T. M. Kavanagh. Defendants were first charged with a crime that has no included offenses of second-degree murder or manslaughter. They were then charged with second-degree murder of which they could not have been guilty, being at the most accessories and the principal having pled guilty to first-degree murder in an armed robbery. Because a defendant and the people wish to bargain, may a judge accept a plea to a crime of which defendant cannot under the law have been guilty? The question was answered by Chief Justice Campbell in *Edwards* v. *People* (1878), 39 Mich 760, 762, when he wrote:

"It is contrary to public policy to have any one imprisoned who is not clearly guilty of the precise crime charged against him."

If a defendant may plead to any offense—guilty or not, and if a judge can accept such a plea—guilty or not, the judge becomes the law. No matter how conscientious and concerned a judge may be—as the trial judge undoubtedly was in this case—it is a decision he is not allowed to make. The law provides (CL 1948, § 768.35 [Stat Ann 1954 Rev § 28.1058]):

"And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed."

T. M. KAVANAGH, J., concurred with ADAMS, J.