PEOPLE *v.* BRADFORD.

1. CRIMINAL LAW—COERCED CONFESSION OF ACCOMPLICE—ADMISSIBILITY.

Testimony of accomplice whose confession was coerced by police could not be excluded in defendant's trial for assault with intent to commit murder as untrustworthy as a matter of law, for exclusion would result in an invasion of the jury's exclusive and unquestioned province as the trier of fact (CL 1948, § 750.83).

2. SAME—CONFESSION OF ACCOMPLICE—ADMISSIBILITY.

Testimony of accomplice could not be excluded on the ground that he was led to confess by trickery, deceit, brutality, or promises, where he was not on trial and the method used to get him to confess went to the jury along with his testimony; it was for the jury to say, under the circumstances, what weight, if any, they would give to what he said in court.

3. SAME—TESTIMONY OF ACCOMPLICE—INSTRUCTIONS.

Trial court did not commit error in denying motion for exclusion of accomplice's testimony as a matter of law in trial for assault with intent to commit murder, where it instructed jury that it was sole judge of credibility of witnesses, that it should carefully scrutinize testimony of a self-accused conspirator, and

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 539, 567, 568.
[2] 29 Am Jur 2d, Evidence §§ 539, 567, 571.
[3, 4] 29 Am Jur 2d, Evidence § 539.
[5] 30 Am Jur 2d, Evidence § 1124.
[6–8] 39 Am Jur, New Trial § 169.
[9, 11] 29 Am Jur 2d, Evidence §§ 320, 321.
[10] 29 Am Jur 2d, Evidence § 425.
[12] 29 Am Jur 2d, Evidence §§ 785–787.
[13] 5 Am Jur 2d, Appeal and Error § 545.
[14] 31 Am Jur 2d, Expert and Opinion Evidence §§ 103, 104.
[15] 53 Am Jur, Trial § 677.
[16] 5 Am Jur 2d, Appeal and Error § 881.

that the weight to be given the testimony should depend upon the extent to which it is corroborated by other testimony (CL 1948, § 750.83).

4. SAME—COERCED CONFESSION OF ACCOMPLICE—ADMISSIBILITY.

Rule that confession will be rejected when it is coerced does not extend to cover the coerced confession of an accomplice implicating defendant, where accomplice is not on trial.

5. SAME—CREDIBILITY OF WITNESS—QUESTION FOR JURY.

The credibility of witnesses was within the province of the jury, and the evidence, if believed by the jury, *held,* sufficient to convince the jury beyond a reasonable doubt in trial for assault with intent to commit murder, where an accomplice testified against defendant, the accomplice's coerced confession was introduced over defendant's objection with cautionary instruction about the weight to be given it, and 2 police officers identified defendant at trial as 1 of the 2 gunmen who committed the assault (CL 1948, § 750.83).

6. NEW TRIAL—WITNESSES—RECANTATION.

Courts are not generally impressed on motion for new trial by recanting affidavits of witnesses who attempt to show that they perjured themselves at trial.

7. CRIMINAL LAW—ACCOMPLICE—RECANTATION—NEW TRIAL.

Denial of motion for new trial based on recantation of testimony by accomplice implicating defendant in crime of assault with intent to commit murder *held,* proper, where the statement that the witness lied was not substantiated by his naming his partner in the crime, if defendant was not the named partner (CL 1948, § 750.83).

8. SAME—WITNESS—RECANTATION—TIME LAPSE.

A lapse of more than 2 years from date of trial to date of recantation of testimony subjects to disbelief the allegations in the recanting affidavits, presented in support of motion for new trial in prosecution for assault with intent to commit murder, of affiant being afraid for his life and of further torture or death while incarcerated in jail during defendant's trial as motives for lying at the trial (CL 1948, § 750.83).

9. SAME—EVIDENCE OF PRIOR CRIMINAL RECORD.

Elicitation of defendant's prior criminal record by prosecutor *held,* not error constituting a denial of due process in prosecution for assault with intent to commit murder so as to require

new trial where defense counsel opened the door by questioning a police officer as to his knowing defendant before the day of the crime (CL 1948, § 750.83).

10. SAME—FAILURE TO OBJECT TO ILLEGALLY OBTAINED EVIDENCE—WAIVER.

Conduct by an accused's counsel in deliberately choosing not to object to illegally obtained evidence in the hope of discrediting the witness and thereby persuading the jury to acquit, or in the hope of inviting error and laying the foundation for subsequent reversal, amounts to a waiver binding on the accused.

11. SAME—PRIOR CRIMINAL RECORD—ADMISSION OF EVIDENCE—TESTIMONY OF DEFENDANT.

Error in introducing defendant's prior criminal record, if his Federal right regarding the admission of evidence was not waived by failure to object, was rendered harmless by defendant taking the stand and testifying in detail to his prior record.

12. SAME—EVIDENCE—PHOTOGRAPHS—DISCRETION OF COURT.

Trial court's refusal to allow the introduction in evidence of photographs showing accomplice's face after he had been beaten to extract confession from him implicating defendant in crime of assault with intent to commit murder was proper, since the question of admissibility of photographs rests largely in the discretion of the trial court and no clear abuse of discretion was shown (CL 1948, § 750.83).

13. APPEAL AND ERROR—QUESTIONS REVIEWABLE—OBJECTIONS—SAVING QUESTION FOR REVIEW.

Objections not raised during trial of prosecution for crime and passed upon by the trial court will not be heard by the Court of Appeals when raised for the first time on appeal.

14. CRIMINAL LAW—MEDICAL TESTIMONY—NATURE AND LOCATION OF WOUNDS.

Admission of medical testimony describing the nature and location of wounds received by police officers in assault by defendant and another with intent to commit murder was not error, since a physician or other qualified person who examined the body of a wounded or injured person may testify as to the location or character of the wound or injury, the direction or course of a bullet in or through the body, or the possible or probable cause of the wound or injury (CL 1948, § 750.83).

15. SAME—TRIAL—INSTRUCTIONS—REASONABLE DOUBT.

   A proper instruction in criminal trial of a test of proof "beyond a reasonable doubt" is whether there is such a doubt as would cause the jurors to hesitate when acting in the graver and more important affairs of life.

16. SAME—ADMISSION OF EVIDENCE—PRESUMPTIONS.

   Evidence admitted is presumed to have been lawfully admitted in prosecution for a crime, where no proper objections were made at trial.

Appeal from Berrien; Hadsell (Philip A.), J. Submitted Division 3 December 7, 1967, at Grand Rapids. (Docket No. 2,379.) Decided April 2, 1968. Rehearing denied May 28, 1968. Leave to appeal denied September 30, 1968. See 381 Mich 778.

Lionel Bradford was convicted of assault with intent to commit murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *John T. Hammond,* Prosecuting Attorney, and *Harry J. Creager,* Assistant Prosecuting Attorney, for the people.

*Tat Parish* and *James B. McQuillan,* for defendant.

HOLBROOK, P. J.    Defendant-appellant, Lionel Bradford, was found guilty by a jury on February 6, 1963, of the crime of assault with intent to commit murder.[1]    He was sentenced to a term of 20 to 40 years.    On May 31, 1966, defendant's motion for new trial was denied by the trial court.    His motion for delayed appeal to this Court was granted August 8, 1966.

---

[1] CL 1948, § 750.83 (Stat Ann 1962 Rev § 28.278).

Pertinent to defendant's appeal are the following facts: During the early morning hours of November 5, 1962, 2 policemen were shot and gravely wounded by 2 gunmen while stopping an automobile to investigate a local burglary in Benton Harbor, Michigan. LeRoy Payne was subsequently arrested. He confessed to the shooting and implicated defendant as his accomplice. Payne's confession was coerced by the police. He was the chief witness for the prosecution at defendant's trial where he named defendant as his accomplice.

In an affidavit made at Ionia State Reformatory, Ionia, Michigan, on August 31, 1965, Payne recanted his trial testimony implicating defendant, stating that the testimony given was false and made under police duress.

Restated, the questions raised by defendant for review will be treated in proper order as follows:

*1. Did the trial court commit error in refusing defense counsel's motion to exclude witness Payne's testimony as untrustworthy as a matter of law?*

At trial witness Payne implicated defendant as his accomplice in the shooting of the 2 police officers. He testified that he knew defendant and related his version of the events in question. He also testified for the prosecution and defense in great detail of physical harm inflicted during police interrogations to which he was subjected. Witness Payne's testimony was certainly to be considered and weighed with no small amount of suspicion. Yet for the trial judge to exclude it as untrustworthy as a matter of law would result in an invasion of the jury's exclusive and unquestioned province as the trier of fact.

In *People* v. *Treichel* (1924), 229 Mich 303, the fact situation and question raised were very similar to that herein. There the implicating accomplice was slapped into a confession by a sheriff. The

Michigan Supreme Court by Mr. Justice WIEST stated on p *309*:

"Defendants may not urge the exclusion of the testimony of Howard Long on the ground he was led to confess by trickery, deceit, brutality or promises. He was not on trial. Methods and means employed to get him to confess went to the jury along with his testimony, and it was for the jury to say, under the circumstances, what weight, if any, they would give to what he said in court."

The jury in the instant case was made aware of the circumstances surrounding and leading to witness Payne's implication of defendant. The trial court gave instructions which were extremely favorable to defendant on this matter[2] and did not commit error in denying defense counsel's motion for exclusion of witness Payne's testimony as a matter of law.

Defendant further contends that the principles which led to the development of exclusionary rules for forced confessions should be equally applicable to the admission of confessional testimony of accomplices. The following statement from *People* v.

---

[2] "Now, as I have told you, you are the sole judges of the credibility of the witnesses, and I charge you that the testimony of a self-accused conspirator or an accomplice should be carefully scrutinized to ascertain whether it is corroborated by other testimony or other witnesses or circumstances, for the weight which you should give it depends upon the extent to which it is corroborated. Such testimony should be received by you with utmost caution and care, because the interest of such witness in the outcome of the trial and the desired result may color or shade his testimony.

"The defense may prove the expectation of gain of any witness for the prosecution whether founded upon agreement of the prosecutor or not, under which the witness for the prosecution testified, and if the defense have made a showing that there is such expectation of gain, the testimony of such witness for the prosecution must be received with great caution, and you alone are the sole judges of the credibility of the witnesses and the weight which is to be given to their testimony, and you are not to be guided or influenced in any manner in forming your opinion as to the guilt or innocence of the defendant by anything outside of the testimony in the case."

*Ferguson* (1965), 376 Mich 90, 97, indicates that this question is an open one in this State:

"It is unnecessary to discuss extending the rule in *People* v. *Hamilton* (1960), 359 Mich 410, to confessional testimony of an accomplice, because nothing appears of record to show that Miller was illegally detained or, if so, that it was for the purpose of extracting a confession. We need go no further, inferring nothing as to the merits of the question."

In view of *People* v. *Treichel, supra,* and absent precedent for extending the rule in *People* v. *Hamilton, supra,* to confessional testimony of an accomplice, we decline to extend it.

*2. Was the evidence sufficient to convince beyond a reasonable doubt?*[3]

The trial court, in ruling on defendant's motion for new trial, indicated that in his opinion the prosecution probably would not have been able to obtain a conviction against defendant without Payne's testimony.

However, in addition to Payne's testimony, 2 police officers identified defendant at trial as 1 of the 2 gunmen. Although defendant sought to discredit their testimony by cross-examination, the credibility of the witnesses was within the province of the jury and therefore we conclude that the evidence if believed by the jury was sufficient to convince beyond a reasonable doubt.

*3. Does the newly discovered evidence (Payne's recanting affidavit) entitle defendant to a new trial?*

. This Court has quoted *People* v. *Smallwood* (1943), 306 Mich 49, 55 on several occasions for the proposition that a "court is not impressed by the

---

[3] The proper standard of proof in criminal cases. *People* v. *Williams* (1962), 368 Mich 494; *People* v. *Washington* (1966), 4 Mich App 453, 456; *People* v. *Fred W. Thomas* (1967), 7 Mich App 519, 539; *People* v. *Cronk* (1968), 9 Mich App 606.

recanting affidavits of witnesses who attempt to show that they perjured themselves at the trial." *People* v. *Dailey* (1967), 6 Mich App 99, 102; *People* v. *Miniear* (1967), 8 Mich App 591. The trial judge, even though the recanting witness was not produced on the hearing of the motion for new trial,[4] was able to form an opinion of the weight to be given the recanting affidavit. In denying the motion for new trial the trial court commented as follows:

"He [LeRoy Payne] informed me in open court that he had done wrong, and that they [Payne and defendant] had done wrong. * * *

"Another thing, his statement [the recanting affidavit] that he lied when he testified that Bradford was with him is not substantiated by his telling who was, and that is a very crucial point in my opinion, in whether or not he is to be believed now, or what he said under oath at the trial."

We concur in the trial court's opinion and note that in the *Smallwood Case* the recanting witness named 2 other persons in asserting the innocence of the defendant.

Also of interest is the fact that Payne's recantation is dated August 31, 1965, evidencing a lapse of more than 2 years. Because of this fact, Payne's allegations in the recanting affidavit of being "afraid for my life" and "fear of further torture or death"

---

4 The record contains a stipulation stating as follows:

"1. The affidavit of LeRoy Payne previously filed in support of defendant's motion for new trial may be considered by this court with the same force and effect as though LeRoy Payne were testifying before this court. Said affidavit is an accurate representation of what LeRoy Payne would testify to if he were actually called.

"2. Their presence not being required and their return from Ionia, Michigan and Jackson, Michigan respectively being an unnecessary expense to the people of the State, it is stipulated that for the purposes of defendant's motion for new trial that neither defendant nor the people shall cause the aforesaid LeRoy Payne or defendant to be called as a witness or returned to Berrien county for the purposes of this motion for new trial."

704      10 Mich App 696.      [Apr.

while incarcerated in Berrien county during defendant's trial compelled his implicating of defendant, are subject to disbelief.

*4. Does the prosecutor's elicitation of defendant's prior criminal record as alleged by defendant require a new trial?*

On re-direct examination of Officer Yost, one of the identifying police officers, the prosecutor entered into the following colloquy:

"*Q.* Now, officer, in connection with your police work over the years, had you previously come in contact with the defendant, Lionel Bradford?

"*A.* I have.

"*Q.* And do you recall how long ago or on how many occasions?

"*A.* Well, it was several years ago on the armed robbery that he was on.

"*Q.* And you worked that case?

"*A.* I was one of the officers that worked it.

"*Q.* Were you one of the officers that worked that case?

"*A.* Yes.

"*Q.* And at that time you came in contact with the defendant?

"*A.* I did.

"*Q.* Do you recall how long a period of time, or how many times you might have seen him during that time?

"*A.* I seen him quite a few times.

"*Q.* And have you subsequently come in contact with him in your police work?

"*A.* Yes.

"*Q.* Can you tell the court and jury—I realize this is a hard question, but I think it's a fair question—approximately how many times over the period of your police work have you come in contact with Lionel Bradford?

"*A.* You mean other than the armed robbery he was on?

"*Q.* No, altogether, including that incident.

"*A.* Oh, I have seen him a dozen times or more."

Defendant contends that this examination is error constituting a denial of due process and requires a new trial. He also contends that defense counsel's failure to object did not constitute a waiver and cites *Henry* v. *Mississippi* (1965), 379 US 443 (85 S Ct 564, 13 L Ed 2d 408) in support of his contention.

Examination of the trial transcript reveals that defense counsel opened the door on cross-examination to the above-quoted colloquy between the prosecutor and Officer Yost as follows:

*(By defense counsel)*

"*Q.* Now, Officer Yost, isn't it true that before this shooting incident you knew LeRoy Payne? That is, the one that jumped out of the driver's side and shot you? You knew him before that, didn't you?

"*A.* Knew of him.

"*Q.* And you had seen him around town?

"*A.* Yes.

"*Q.* And you also knew Mr. Bradford before this shooting incident, didn't you?

"*A.* I did.

"*Q.* And you had had occasion to see him around town?

"*A.* I had."

The fact that Officer Yost knew defendant prior to the date of the crime charged was first brought out by defense counsel. It appears that this was a deliberate trial tactic on his part, *i.e.,* defense counsel weighed the advantages and disadvantages of his questioning Officer Yost and decided he would rather emphasize to the jury that the defendant was well known to the police officers prior to the crime charged as against the possibility that the jury might become aware of the fact that defendant had

previous contact with the police. *Henry v. Mississippi, supra,* although dealing with admission of illegally obtained evidence, is analogous and provides in headnote 9 of Lawyers Edition an answer to the violation of due process alleged by defendant.

"If an accused's counsel in a State prosecution deliberately chooses not to object to illegally obtained evidence in the hope of discrediting the witness and thereby persuading the jury to acquit, or in the hope of inviting error and laying the foundation for a subsequent reversal, his conduct amounts to a waiver binding on the accused and precluding the accused from a decision either in the State courts or in the United States Supreme Court on the merits of his Federal claim regarding the admission of the evidence."

We also find that the questioning by the prosecutor was not intended to bring out any past criminal record of defendant. It appears to have been done with good intentions to bolster proof of the officer's ability to recognize defendant. Defendant has failed to make a sufficient showing to this Court that he did not actually intend to waive any Federal right against this alleged introduction of a prior criminal record by a failure to object. It is inconceivable that defense counsel was taken by surprise by the prosecutor's line of questioning—the Michigan law regarding introduction of prior criminal records is not unknown. *Henry v. Mississippi, supra.* Finally, error, if any, was rendered harmless because defendant subsequently took the witness stand and testified in detail of his prior criminal record.

*5. Do all or any one of the following claimed errors require the granting of new trial?*

A. The trial court's refusal to allow the introduction in evidence of photographs showing witness Payne's face after he had been beaten.

Payne testified on direct examination to abusive treatment, including facial beatings, in detail:

"*Q.* Then what happened?
"*A.* He started beating me in the face.
"*Q.* He struck you?
"*A.* Yes, sir.　*　*　*
"*Q.* Were you bruised?
"*A.* Yes, sir.
"*Q.* Did you have a black eye?
"*A.* Both my eyes were black, sir.
"*Q.* Did you have a cut under your right eye?
"*A.* Yes, sir."

"The question of admissibility of photographs rests largely in the discretion of the trial court." 23 CJS, Criminal Law, § 852(1), p 345.

No clear abuse of discretion by the trial judge having been shown, we conclude the ruling to have been a proper one.

B. The admission of medical testimony describing the nature and location of the wounds received by the police officers.

Defendant made no objection at trial to the testimony now alleged to be prejudicial. Objections not raised during trial and passed upon by the trial court will not be heard in this Court, when raised for the first time on appeal. See *People* v. *Doverspike* (1966), 5 Mich App 181, 191, and cases there cited. 23 CJS, Criminal Law, § 868, p 428 states as follows:

"A physician, or other qualified person, who examined the body of a wounded or injured person may testify as to the location or character of the wound or injury, the direction or course of a bullet in or through the body, or the possible or probable cause of the wound or injury."

We find no error as regards the medical testimony describing the nature and location of the wounds received by the police officers.

C. An instruction indicating a test of proof of the term "beyond a reasonable doubt" to be whether there exists such a doubt as would cause the jurors to hesitate when acting in the graver and more important affairs of life.

This instruction was proper, having been approved by our Supreme Court in *People* v. *Powers* (1918), 203 Mich 40, 44.

D. A statement by the prosecutor indicating that gloves may have been worn by one of the gunmen and questions by the prosecutor on cross-examination of defendant about "drag racing" and defendant's relationship with a "common-law wife."

Defendant made no objection at trial to the statement and questions now alleged to be prejudicial. Evidence admitted is presumed to have been lawfully admitted in prosecution for a crime, where no proper objections were made at the trial. *People* v. *Jury* (1966), 3 Mich App 427.

In the instant case we have recognized that the officers brutally assaulted witness Payne who was being held on the same charge. We are compelled to condemn such conduct on the part of the officers. This conduct violates the law and is degrading and obnoxious to the administration of justice. *People* v. *Treichel, supra,* p 312.

Affirmed.

Burns and J. H. Gillis, JJ., concurred.