PEOPLE *v.* BRUNO

PEOPLE *v.* DAVIS

1. EXTORTION—EVIDENCE—PARTICIPATION IN CRIME.

Evidence that the defendant's codefendant had told the complainant that if certain money wasn't paid the codefendant would put the complainant's head through a wall and that the complainant shouldn't think that he wasn't going to pay the money because he had a nice family and he could take his choice between paying and his family was sufficient evidence to submit the question of the defendant's extorting money from the complainant even though the complainant testified that defendant stated at the meeting with the complainant that he didn't want "this toughness" and suggested that the complainant just play along and give them the money, because a person concerned in the commission of a crime may be prosecuted, tried and convicted as if he had directly committed the crime (MCLA §§ 750.213, 767.39).

2. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—PROSECUTOR'S DUTY—IMPEACHMENT.

The prosecutor is obligated by law to call *res gestae* witnesses and the witnesses are by statute subject to impeachment by the prosecutor the same as if they had been called by the defendant (MCLA § 704.40a).

3. CRIMINAL LAW — TRIAL — WITNESSES — IMPEACHMENT — INSTRUCTIONS TO JURY—WAIVER.

Failure to instruct the jury that material used to impeach witnesses was not evidence in the defendants' case was proper

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 31 Am Jur 2d, Extortion, Blackmail, and Threats § 8 *et seq.*
[2, 3] 58 Am Jur, Witnesses § 674 *et seq.*
[4] 58 Am Jur, Witnesses § 4.
[5] 21 Am Jur 2d, Criminal Law § 321.
[6] 29 Am Jur 2d, Evidence § 428 *et seq.*
[8] 5 Am Jur 2d, Appeal and Error § 545.

where the prosecutor asked for an instruction limiting the material's use, the trial judge asked the defendants' attorneys if they wanted an instruction, and the lawyers stated that they were satisfied, because the defendants had waived their right to a limiting instruction.

4. CRIMINAL LAW—JUROR'S PREJUDICE—COURT'S QUESTIONING.

Failure to interview the jurors to ascertain whether they had read a newspaper article which contained a prejudicial statement about one of the defendants was not error where the judge asked the defendant's attorney if he was asking the court to interrogate the jury and defendant's attorney replied that he was "asking simply for mistrial", because defense counsel did not want the jurors questioned.

5. CRIMINAL LAW—TRIAL—SUBSTITUTION OF ATTORNEY—DISCRETION.

Trial judge did not abuse the defendant's constitutional right to be represented by an attorney of his choice at trial when on the day set for trial he refused a substitution of counsel where the proposed new attorney of record waited until the last minute before trial to seek the substitution, was unable or unwilling to commit himself to appear for the defendant's trial upon the conclusion of a case he was engaged in, and refused to give the court a date certain when he would be able to appear for the defendant's trial.

6. CRIMINAL LAW—EVIDENCE—WIRETAPPED PHONE CONVERSATION— ADMISSIBILITY—CONSTITUTIONAL LAW.

A tape recording of a telephone conversation between the defendant and another party, obtained by a wiretap, was admissible into the defendant's trial where the party to the conversation consented to the wiretap.

7. EXTORTION—ELEMENTS OF CRIME—OVERT ACT—STATUTES.

An overt act to carry out a threat is not necessary in order for the defendant to have committed extortion (MCLA § 750-.213).

8. CRIMINAL LAW—ARREST—ILLEGALITY—APPEAL AND ERROR.

A defendant who pled not guilty to a charge, stood trial, and was convicted by a jury cannot be heard to complain of the illegality of his arrest on appeal.

Appeal from Oakland, William John Beer, J. Submitted Division 2 November 9, 1970, at Lansing. (Docket No. 6841.) Decided February 15, 1971.

Michael D. Bruno and Thomas F. Davis were con-
victed of extortion. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Thomas G. Plunkett,*
Prosecuting Attorney, and *Dennis Donohue,* Chief
Appellate Counsel, for the people.

*Louisell & Barris* (by *Carl Ziemba*), for defend-
ant Bruno on appeal.

*Renne & Welter,* for defendant Davis on appeal.

Before: QUINN, P. J., and DANHOF and CARROLL,*
JJ.

DANHOF, J.   The defendants were charged in a
two-count information with extortion MCLA § 750-
.213 (Stat Ann 1962 Rev § 28.410), and conspiracy to
commit extortion MCLA § 750.157a (Stat Ann 1970
Cum Supp § 28.354[1]).   At the conclusion of the
trial, a motion for a directed verdict of acquittal on
count II, the conspiracy charge, was granted, but
count I, the extortion charge, was allowed to go to
the jury, which brought in a guilty verdict against
both defendants.   They have appealed alleging nu-
merous errors.

We will consider first the questions presented by
defendant Bruno.   He argues that the court erred
in denying his motion for a directed verdict of ac-
quittal on count I because the prosecution failed to
show that he uttered any threats of physical vio-
lence to the complainant.

The complaining witness, Donald Spalla, who
managed a bowling alley in Pontiac, gave the fol-

* Circuit judge, sitting on the Court of Appeals by assignment.

lowing testimony at the trial. On May 11, 1967, at approximately 9 p.m., Mr. Bruno telephoned Mr. Spalla at the bowling alley, said his name was Mike Delucca, and asked him to stay there for an hour or so because of an important business matter. At about 9:30 p.m., the defendants and Mr. Jebrail came to the bowling alley together. Mr. Bruno asked if they could go some place for a discussion and Mr. Spalla took them to his office. They told Mr. Spalla they were sent by Mrs. Patricia Kelly to pick up $4600. Mr. Spalla denied owing the money, and Mr. Bruno said Mr. Spalla was making a mistake, that he did owe it, and they weren't out there to argue about whether or not he owed the $4600. Then defendant Davis leaned over him and said:

"Let's not fuck around; because don't think your pretty head is going to stop you, because I will put your fucking head right through that wall. * * * Don't think that you are not going to pay the $4600, because you have a nice business and you have a nice father and a nice wife; so, take your choice."

Mr. Bruno then asked Mr. Davis to step back adding that he could handle this in a lot better fashion, than going through this toughness. Then Mr. Bruno said to Mr. Spalla, "I think you should come up with the money, Don, because they mean business", and asked Mr. Spalla when he could have the money. Mr. Bruno asked Mr. Davis and Mr. Jebrail to leave the office and Mr. Bruno put his arm around Mr. Spalla's shoulder and said, "Look, Don, we are *cumbaries;*[1] you don't want to have any more trouble than you have to have; so, just play along and have the money".

MCLA § 750.213 (Stat Ann 1962 Rev § 28.410), states:

---

[1] Mr. Spalla said that "cumbari" means "friendship".

"Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense, or shall orally or by any written or printed communication maliciously threaten any injury to the person or property or mother, father, husband, wife or child of another with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony, punishable by imprisonment in the state prison not more the 20 years or by a fine of not more than 10,000 dollars."

The testimony of Mr. Spalla clearly constituted sufficient evidence to submit the case to the jury. *People* v. *Brant* (1966), 5 Mich App 315. Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may be prosecuted, indicted, tried, and on conviction punished as if he had directly committed such an offense. MLCA § 767.39 (Stat Ann 1954 Rev § 28.979).

The next question is whether the court erred in allowing the prosecution to read into the record testimony given by Phillip Jebrail upon a preliminary examination which was not the basis for the issuance of the information in this case. This issue assumes facts which are not supported by the record. The information in this case was filed as a result of the preliminary examination held on February 9, 1968, March 6, 1968, and March 29, 1968. It was the testimony of Phillip Jebrail, given on March 29, 1968, which was read to the jury. That was not error.

Next it is argued that the trial court erred in not *sua sponte* instructing the jury to disregard the testimony of Patricia Kelly and William Jebrail

upon directing a verdict of acquittal on count II because their testimony was admitted simply because the information contained a conspiracy count naming Patricia Kelly as a coconspirator. No authority is cited for this proposition. Generally, failure to object to instructions or failure to request additional instructions forecloses appellate review. *People* v. *Charles Jackson* (1970), 21 Mich App 132; GCR 1963, 516.2 No manifest injustice occurred.

It is also asserted that the trial court erred in permitting the prosecutor to impeach Patricia Kelly and William Jebrail and in failing to instruct the jury that material used to impeach those two witnesses was not evidence in the case. Both Mrs. Kelly and Mr. Jebrail were *res qestae* witnesses as to the conspiracy count. As such the prosecutor was obliged by law to call them and they were subject to impeachment the same as if they had been called by the defendants. MCLA § 767.40a (Stat Ann 1954 Rev § 28.980 [1]). After the jury had been instructed on the law, the prosecutor specificially asked for an instruction limiting the impeachment statements. The trial judge then asked the defense lawyers if they wanted such an instruction. The lawyers for both defendants stated that they were satisfied. We hold that this constituted a waiver of the defendants' right to such an instruction.

Next it is urged that the trial court erred in allowing the prosecutor to cross-examine Patricia Kelly and William Jebrail without showing that they were hostile, or that he had been taken by surprise. As has been stated previously in this opinion, the prosecutor had the right by statute to impeach *res gestae* witnesses. The two cases cited by defense counsel are so unlike the instant case as to make any discussion of them unnecessary.

It is also claimed that the trial court committed error in allowing the prosecution to play a tape of a telephone conversation between the complainant and Patricia Kelly after the complainant testified as to its content and before the accuracy of that conversation was attacked. No authority is cited in support of that position. The proper foundation necessary to permit the admission of sound recordings was set forth in *People* v. *Taylor* (1969), 18 Mich App 381, *leave to appeal granted* (1970), 383 Mich 794. These requirements were fulfilled in the present case.

Error is alleged because the trial court did not interview the jurors to ascertain whether they had read a newspaper article which contained a prejudicial statement about codefendant Davis. When the trial judge asked Mr. Davis' attorney if he was asking him to interrogate the jury, the attorney replied, "No, I am not. I am asking simply for mistrial". Mr. Bruno's attorney then addressed the court and appeared to agree with that position. We find no error since the court would not know whether any of the jurors had read the article without interrogating them and defense counsel did not want that done.

The next question is whether the trial court erred in denying a pretrial motion to quash the information on the basis that no probable cause had been shown at the preliminary examination on both count I and count II. No supporting authority is cited, nor are any facts detailed showing just where the proofs at the preliminary examination were deficient. An appellate court will not reverse a finding of probable cause unless there has been a clear abuse of discretion on the part of the examining magistrate. *People* v. *Spann* (1966), 3 Mich App 444. We find no such abuse of discretion here.

The last issue presented by defendant Bruno is that the trial court erred in entertaining a confused and ambiguous question from the jury without asking for clarification and in answering the question in a confusing and ambiguous manner. All counsel declared that they were satisfied when the trial judge specifically asked if there was any question about the way and manner in which he answered the question. Thus, the issue has been waived.

We will consider now the questions presented by defendant Davis. First, he asserts that he was denied his constitutional right to be represented by an attorney of his choice at the trial. On the day set for trial, the court refused to allow Mr. Renne to be substituted for Mr. Smith, the attorney of record for defendant Davis. The substitution was denied because Mr. Renne was unable to give the trial court a date certain when he would be free from other professional commitments and available for the trial in the present case. Mr. Renne waited until the last minute to seek the substitution, and then was unable or unwilling to commit himself to appear for the trial in this case upon the conclusion of the one in which he was engaged. Clearly, the trial judge did not abuse his discretion in denying the substitution.

Next, it is argued that the introduction into evidence of a tape recording of a telephone conversation between Mr. Spalla and Mrs. Kelly violated the Federal constitutional rights of the defendant. As authority for this position, we are referred to *Lee* v. *Florida* (1968), 392 US 378 (88 S Ct 2096, 20 L Ed 2d 1166). That case is distinguishable because the interception was not authorized by either party. In the present case, the wiretap was authorized by Mr. Spalla, and in *Rathbun* v. *United States* (1957), 355 US 107 (78 S Ct 161, 2 L Ed 2d 134), *reh den* 355

US 925 (78 S Ct 363, 2 L Ed 2d 355), it was held that the consent of one party was sufficient.

It is also contended that the conviction was obtained through "trickery", or "subterfuge" in denial of due process of law. The argument in support of this is unpersuasive. There was no error in admitting the testimony of the *res gestae* witnesses, Patricia Kelly and William Jebrail. The jury instructions were approved by defense counsel.

The next question is whether the people alleged and proved any crime at all. The argument is that there was no overt act to carry out the threat and, therefore, no crime was committed. The answer is that the statute does not require an overt act to carry out the threat. MCLA § 750.213 (Stat Ann 1962 Rev § 28.410).

It is also argued that the court did not give "adequate" and "fair" instructions to the jury. Again we state that counsel expressed satisfaction with the instructions when given and has, therefore, not preserved the issue for appeal. GCR 1963, 516.2.

The final argument is that the trial court denied the defendant's right to inquire into the legality of his arrest. In *People* v. *Gologonoff* (1967), 6 Mich App 332, 334, this Court wrote

"With respect to defendant's claim that his arrest was illegal, he pleaded not guilty, stood trial, and was convicted by a jury. He cannot now be heard to complain of the alleged illegality of his arrest."

We find no error. Affirmed.
All concurred.