PEOPLE v PLAMONDON
PEOPLE v BLAZIER

OPINION OF THE COURT

1. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—EVIDENCE—
    EAVESDROPPING—EAVESDROPPING WITHOUT WARRANT—CON-
    SENT.

    Prior state decisions holding that the constitutional protection
    against unreasonable searches and seizures is inapplicable to
    situations of eavesdropping and recording of a telephone call
    made with the cooperation of a police informant, without a
    warrant are inapplicable to cases involving electronic surveil-
    lance which occurred after the date of a Federal decision which
    held that such eavesdropping without a warrant was prohibited
    by the search and seizure provisions of the Federal Constitu-
    tion.

2. SEARCHES AND SEIZURES—EAVESDROPPING WITHOUT WARRANT—
    CONSTITUTIONAL LAW—CRIMINAL LAW—RADIO MONITORING.

    Monitoring a conversation between a criminal defendant and an
    informant who was equipped with a hidden radio transmitter
    and who transmitted the conversation to police officers, without
    a warrant, violates the defendant's constitutional right to be
    free from unreasonable searches and seizures (Const 1963, art
    1, § 11).

3. SEARCHES AND SEIZURES—FOURTH AMENDMENT—PRIVACY—PUBLIC
    TELEPHONE BOOTH—EAVESDROPPING—CONSTITUTIONAL LAW.

    What a person knowingly exposes to the public, even in his home
    or office, is not a subject of Fourth Amendment protection;

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 68 Am Jur 2d, Searches and Seizures § 24.
[2, 3] 68 Am Jur 2d, Searches and Seizures § 31.
[4] 68 Am Jur 2d, Searches and Seizures § 35 *et seq.*
[5] 68 Am Jur 2d, Searches and Seizures §§ 2, 4.
[6] 32 Am Jur 2d, Federal Practice and Procedure § 330.
[7] 68 Am Jur 2d, Searches and Seizures §§ 30, 31.
[8, 9] 21 Am Jur 2d, Criminal Law § 231.
[10] 68 Am Jur 2d, Searches and Seizures § 46.

however, a person making a telephone call in a public telephone booth has a right to rely upon the protection of the Fourth Amendment (US Const, Am IV).

4. CONSTITUTIONAL LAW—SEARCHES AND SEIZURES—PRIVACY—OFFICIAL INVESTIGATION—WARRANT REQUIREMENT.

Official investigatory action, including the use of electronic listeners or observers, that impinges on privacy must typically, in order to be constitutionally permissible, be subjected to the warrant requirement.

5. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—PRIVACY—LEGAL CAUSE.

The purpose of the constitutional protection against unreasonable searches and seizures is to make sacred the privacy of the citizen's dwelling and person against everything but process issued upon a showing of legal cause for invading it.

6. COURTS—APPEAL AND ERROR—CASE PRECEDENT—PLURALITY OPINIONS.

Michigan is not bound by plurality opinions of the United States Supreme Court; where there is no agreement by a majority of the United States Supreme Court on the ground of a decision, that decision is not binding precedent for subsequent cases.

7. SEARCHES AND SEIZURES—EAVESDROPPING—EAVESDROPPING WITHOUT WARRANT—CONSENT.

A defendant's right to be free from unreasonable searches and seizures was violated and reversible error was committed when tapes and transcripts of an overheard telephone conversation were introduced into evidence where the police officers failed to secure a warrant before engaging in the eavesdropping, and where the defendant did not know that the other participant in the conversation was cooperating with the police and that the other participant had consented to the eavesdropping.

8. CONSTITUTIONAL LAW—EQUAL PROTECTION—CRIMINAL LAW—DISCRIMINATORY ENFORCEMENT—ARBITRARY CLASSIFICATION.

Constitutional provisions forbid discriminatory enforcement of laws and the discriminatory prosecution for the alleged violations thereof; however, a violation of equal protection will not be found unless the defendant claiming such discrimination makes an affirmative showing that the decision to prosecute was based upon religion, race, or some other arbitrary or invidious classification.

9. Constitutional Law—Criminal Law—Extortion—Discrimina-
   tory Prosecution—First Amendment—Free Speech—Free
   Association.

   Defendants failed to establish that their rights of free speech and
   association were violated in a prosecution for extortion where
   the defendants allege that the prosecution was because they
   were advocates for the legalization of marijuana and active
   participants in a disfavored political party but where their acts
   of extortion were unrelated to any protected First Amendment
   activity, and the defendants failed to show that other alleged
   extortionists with differing political viewpoints were not sub-
   jects of prosecution (US Const, Am I).

   Dissent by D. E. Holbrook, P. J.

10. Searches and Seizures—Eavesdropping—Eavesdropping With-
    out Warrant—Consent.

    *It is generally impermissible for police officers to conduct an
    electronic surveillance, wiretap, or record a conversation of
    private persons without an order to do so issued from an
    independent magistrate; but such an order was not necessary
    where one party to the conversation consented to the intercep-
    tion of the conversation and the case was tried prior to a
    precedent case holding contra where the ruling was given
    prospective application only.*

Appeal from Benzie, William R. Peterson, J.
Submitted May 15, 1975, at Grand Rapids. (Docket
Nos. 19267, 19268.) Decided September 22, 1975.
Leave to appeal granted, 395 Mich 813.

Lawrence Plamondon and Craig Blazier were
convicted of extortion by accusation. Defendants
appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Max E. Simon,*
Assistant Attorney General, for the people.

*John B. Phelps,* Assistant State Appellate De-
fender, for defendants.

Before: D. E. Holbrook, P. J., and Allen and
D. E. Holbrook, Jr., JJ.

Allen, J. The trial court, sitting without a jury,
found defendants guilty of extortion by accusation.
MCLA 750.213; MSA 28.410. On September 28,
1973, the trial court sentenced Plamondon to five
years' probation, and sentenced Blazier to two
years' probation.

This case arises out of an incident which occur-
red January 31, 1973, when defendants entered
the home rented by Uwe Wagner, a self-confessed
drug dealer in Honor, Michigan. Defendants came
to collect $3,000 which Wagner apparently owed
Blazier in exchange for 25 pounds of marijuana
which Blazier had sold to Wagner in the first part
of January, 1973. Defendants threatened Wagner,
stating that his failure to pay the $3,000 would
result in Wagner suffering broken arms and legs.
Defendants further threatened Wagner that they
would expose him as a "rip-off artist" and would
inform various governmental agencies that Wag-
ner was an opium pusher. Plamondon apparently
told Wagner to come up with the money by Valen-
tine's Day, and directed Wagner's attention to the
infamous St. Valentine's Day Massacre. Various
personal articles of Wagner's, including his stereo
speakers, his social security card, alien registra-
tion card and draft registration card, as well as a
water pipe, some clothing and some other pipes
utilized in the consumption of various controlled
substances, were taken by defendants as "collat-
eral" for the money which Wagner allegedly owed
Blazier.

The day after defendants departed from Wag-
ner's home, Wagner contacted an attorney who
arranged protective custody for Wagner in the
Antrim county jail. Subsequent thereto, he dis-

cussed what had occurred with a state police officer who in turn contacted officers from the state police headquarters in East Lansing. On February 26, 1973, Wagner, at the suggestion of Detective Sergeant Robert F. Ward of the intelligence section of the Michigan State Police, telephoned Plamondon to discuss Plamondon's role in the affair and Wagner's apparent ability to pay the defendants shortly. Another phone call was made February 27, at which time the same matters were discussed. Both calls were made by Wagner from Sgt. Ward's room 133 in the Foxhouse Motel located in Traverse City and while Officer Ward was present.

Both of the above phone calls were tape recorded, and the tapes were played at trial and admitted into evidence over defense counsel's objection. Sgt. Ward placed an induction coil onto the earpiece of the telephone, and the recording was fed into a tape recorder. While the officer, who was present in the motel room, could hear Wagner speak, he had to replay the tape to hear what Plamondon was saying, and did so immediately after the call was completed. Ward testified that after meeting Wagner during the afternoon of February 26, he suggested that the taped telephone calls be made to Plamondon. Ward had been assigned to the case on February 23, and after speaking with Wagner, decided that the proper thing to do would be to call Plamondon who, based upon Wagner's recital of the event, seemed to be the person in charge.

The above facts have framed defendants' initial claim on appeal, namely, whether defendants' right to be free from unreasonable searches and seizures, US Const, Am IV and Const 1963, art 1, § 11, was violated when tapes of those two tele-

phone conversations between defendant and the complaining witness Wagner were admitted into evidence, where the conversations were obtained without obtaining prior judicial authorization in the form of a warrant. This case presents a second claim of error—that defendants were the victims of a discriminatory and politically-based prosecution in light of the history of the relationship between various state law enforcement agencies and members of defendants' political organization (Rainbow People's Party), the resources expended and devoted to the investigation and prosecution of defendants, and the decision by the prosecutor not to pursue enforcement actions against Wagner, the informant, but rather pursuing this case against defendants.

Relying upon *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), defendants argue that the trial court erred in admitting into evidence the tapes and transcripts thereof of two telephone conversations had between Wagner and defendant where, without prior judicial authorization, the State Police monitored a phone call (at Wagner's end of the line) and recorded the same. The prosecutor responds, and relies upon *United States v White,* 401 US 745; 91 S Ct 1122; 28 L Ed 2d 453 (1971), for the proposition that the constitutional protection against unreasonable searches and seizures is inapplicable to such a situation. Research has disclosed that our Court has previously declined to apply *Katz* to the warrantless eavesdropping and recording of a telephone call made with the cooperation of a police informant or the complaining witness. *People v Drielick,* 56 Mich App 664, 667; 224 NW2d 712 (1974), *People v Rappuhn,* 55 Mich App 52, 59–60; 222 NW2d 30 (1974), *lv den,* 393 Mich 808 (1975), and *People v*

*Karalla,* 35 Mich App 541, 545; 192 NW2d 676
(1971), *lv den,* 386 Mich 765 (1971). Further, our
Court in *People v Bruno,* 30 Mich App 375, 382–
383; 186 NW2d 339 (1971), applied the pre-*Katz*
decision of *Rathbun v United States,* 355 US 107;
78 S Ct 161; 2 L Ed 2d 134 (1957), to find no
violation of defendant's rights. Recently, the Mich-
igan Supreme Court found that the warrantless
monitoring of a conversation between defendant
and an informant who was equipped with a radio
transmitter under his shirt and who transmitted
the conversation to police officers violated defend-
ant's right to be free from unreasonable searches
and seizures, and in particular bottomed its deci-
sion upon Michigan's constitutional protection
against the same, Const 1963, art 1, § 11. *People v
Beavers,* 393 Mich 554; 227 NW2d 511 (1975).
However, that opinion limited itself to prospective
application, and we are thus unable to specifically
predicate our decision upon it.

At the outset of our discussion, we note that
*Rathbun, supra,* was not a constitutional case, but
rather was based upon a specific Federal statute
which was concerned with the interception and
divulging of communications. A subsequent deci-
sion dealing with the same statutory provision, 47
USC 605, found error in light of the facts therein,
but specifically noted that the Fourth Amendment
claim was not decided and that the opinion was
limited to the statutory grounds. *Lee v Florida,*
392 US 378, 379; 88 S Ct 2096, 2097; 20 L Ed 2d
1166 (1968). Thus, the *Lee-Rathbun* line of cases
cited in *Bruno, supra,* would be inapplicable to a
constitutional claim.

In *Katz, supra,* the public telephone booth from
which defendant had made a telephone call was
"bugged" and law enforcement officials were able

to listen to and record defendant's words. In the course of its discussion, *Katz, supra,* noted that "What a person knowingly exposes to the public, even in his home or office, is not a subject of Fourth Amendment protection." 389 US at 351; 88 S Ct at 511; 19 L Ed 2d at 582. The Court said that Katz, making a telephone call in a public telephone booth, had a right to "rely upon the protection of the Fourth Amendment", and that he was "entitled to assume that the words he utter[ed] into the mouthpiece [would] not be broadcast to the world". 389 US at 352; 88 S Ct at 511–512; 19 L Ed 2d at 582. *Katz, supra,* further noted that the Fourth Amendment governed "the recording of oral statements * * * ", and that the government's use of an electronic device to listen to and record defendant's statements "violated the privacy upon which he justifiably relied while using the telephone booth", and therefore was found to be "a 'search and seizure' within the meaning of the Fourth Amendment". 389 US at 353; 88 S Ct at 512; 19 L Ed 2d at 583. *Katz, supra,* noted that electronic surveillance did not come within the specific exceptions to the warrant requirement (incident to arrest, hot pursuit), pointed out that the nature of the police activity "preclude[d] its use pursuant to the suspect's consent", consent and rejected the argument that electronic surveillance of a phone booth constituted a separate exception to the warrant requirement. 389 US at 357–358; 88 S Ct at 514–515; 19 L Ed 2d at 585–586.

*United States v White,* 401 US 745, 746–747; 91 S Ct 1122, 1123; 28 L Ed 2d 453, 456 (1971), upon which the prosecutor relies, involved the use, by a government informant, of a radio transmitter concealed on his person which transmitted conversa-

tions entered into between defendant and the informant to government agents who could overhear the conversations by monitoring the frequency of the transmitter. Mr. Justice White, speaking for himself and three other justices, rejected the argument that *Katz, supra,* precluded the admission into evidence of the agent's testimony regarding the overheard conversations. In the course of his discussion, Mr. Justice White referred to the "misplaced confidence" decision of *Hoffa v United States,* 385 US 293; 87 S Ct 408; 17 L Ed 2d 374 (1966), which afforded no Fourth Amendment protection to defendant engaged in a personal confrontation with an informant barren of electronic surveillance equipment, *Lewis v United States,* 385 US 206; 87 S Ct 424; 17 L Ed 2d 312 (1966), involving a personal encounter between defendant and a nonelectronically equipped narcotics agent who concealed his identity to purchase narcotics from defendant, and *Lopez v United States,* 373 US 427; 83 S Ct 1381; 10 L Ed 2d 462 (1963), which also involved a personal meeting between defendant and a government agent who was equipped with a pocket tape recorder but who had been invited to defendant's office and with whom defendant spoke voluntarily. Relying upon the above, Justice White concluded that because police agents acting by themselves could participate in warrantless activities, the mere introduction of electronic aids should not carry the case to the proportions of a Fourth Amendment violation. 401 US at 751–753; 91 S Ct at 1126–1127; 28 L Ed 2d at 458–460.

Because *White, supra,* was decided some four years after *Katz, supra,* it would appear at first blush that the monitoring in the case before us was not a violation of Fourth Amendment protection. For reasons which we now spell out in detail,

we do not agree. Mr. Justice Harlan wrote the major dissenting opinion in *White, supra,* and in the course thereof distinguished the "misplaced confidence" situation from the problem in which a third party, unknown to defendant, may be listening to the conversation. 401 US at 776–777; 91 S Ct at 1138; 28 L Ed 2d at 472–473. This monitoring was not present in the cases referred to in Justice White's opinion. We have seen that in *Hoffa, supra,* the informant personally met with defendant then repeated the conversation to police officers. *Lewis v United States, supra,* also involved a personal encounter and no electronic surveillance. Defendant therein knowingly invited the agent into his home to engage in a narcotic transaction. While a pocket tape recorder was involved in *Lopez v United States, supra,* defendant therein specifically consented to speak to the agent in person. Harlan stated that *On Lee v United States,* 343 US 747; 72 S Ct 967; 96 L Ed 1270 (1952), could "no longer be regarded as sound law", 401 US at 769; 91 S Ct at 1134; 28 L Ed 2d at 468, and subsequently referred to the general proposition that "official investigatory action that impinges on privacy must typically, in order to be constitutionally permissible, be subjected to the warrant requirement". 401 US at 781; 91 S Ct at 1140; 28 L Ed 2d at 475. Harlan noted the distinctions between the situation in *White, supra,* and the *Lopez, Lewis, Hoffa* cases, which we have noted above, and concluded that the citizens of our country should not be burdened with "the risks of the electronic listener or observer without at least the protection of a warrant requirement". 401 US at 784–786; 91 S Ct at 1142–1143; 28 L Ed 2d at 477–478.

Mr. Justice Harlan's views as to the purpose of

the Fourth Amendment's warrant requirement, bear a resemblance to a statement made by former Justice COOLEY in *Weimer v Bunbury,* 30 Mich 201 (1874), a civil suit involving a public levy upon the petitioner's property. In the course of rejecting the argument that Const 1850, art 6, § 26, a predecessor to Const 1963, art 1, § 11, had been violated when the petitioner's property had been seized and levied upon, Justice COOLEY said that the purpose of this constitutional protection against unreasonable searches and seizures:

"was to make sacred the privacy of the citizen's dwelling and person against everything but process issued upon a showing of legal cause for invading it". 30 Mich at 208.

In light of the well-established purpose of Michigan's constitutional protection against unreasonable searches and seizures, and former Justice Harlan's discussion of the Federal protection against the same, we are prepared to state that our Court should adhere to Harlan's rather than White's views on this question. Michigan is not bound by plurality opinions of the United States Supreme Court, it having been stated that where there is no agreement by a majority of the United States Supreme Court on the ground of a decision, that decision is not binding precedent for subsequent cases. *People v Anderson,* 389 Mich 155, 170; 205 NW2d 461 (1973). As noted earlier, Mr. Justice White and three other justices specifically agreed with his Fourth Amendment analysis, whereas Justice Black concurred in the judgment of the case.[1]

---

[1] *See* Mr. Justice Black's concurrence, premised upon his dissent in *Katz, supra,* in which he felt that the Fourth Amendment was inapplicable to "eavesdropping" and that one's words could not be

Further support for our conclusion that we should not be bound by Mr. Justice White's opinion is the fact that the *White, supra,* decision necessarily had to be premised on pre-*Katz, supra,* law. In fact, Mr. Justice White, the three other members who previously joined him, as well as Mr. Justice Brennan who specifically concurred in the result in light of *Desist v United States,* 394 US 244; 89 S Ct 1030; 22 L Ed 2d 248 (1969), specifically said that *White, supra,* which involved electronic surveillance which occurred in late 1965 and early 1966, previous to the December 18, 1967 date of the *Katz, supra,* decision, had to be bound by pre-*Katz, supra,* law in light of the *Desist* opinion which had held that *Katz, supra,* was not retroactive. 401 US at 754; 91 S Ct at 1127; 28 L Ed 2d at 460. The Court in *White, supra,* had to apply the pre-*Katz* decisions, most notably *On Lee, supra.* Our case involves electronic surveillance which occurred subsequent to the date of the *Katz, supra,* decision, and we find that the result in *White, supra,* premised upon pre-*Katz, supra,* law, to be inapplicable to our case. See *Holmes v Burr,* 486 F2d 55, 71 (CA 9, 1973) (Hufstedler, J., dissenting), *cert den,* 414 US 1116; 94 S Ct 850; 38 L Ed 2d 744 (1973).

As to the merits in the present case, we make the following observations. Unlike the "face-to-face" situations found in the previously distinguished cases relied upon by Mr. Justice White, defendant herein did not know that Police Officer Ward, seated in the officer's motel room with Wagner, was monitoring and recording defendant's telephone call with Wagner. While Wagner, an admitted drug dealer, of course cooperated with

---

seized within the meaning of the Fourth Amendment. 389 US 347, 364–365; 88 S Ct 507, 518–519; 19 L Ed 2d 576, 589–595, cited at 401 US at 754; 91 S Ct at 1127; 28 L Ed 2d at 460.

the police to obtain this incriminating evidence against defendant, defendant was obviously, by the nature of electronic surveillance and the goal of this operation, not apprised of what was going on. It would seem absurd to find that defendant had somehow consented to this activity. To say that Wagner's consent would suffice would seem to run afoul of the rule in *Stoner v California,* 376 US 483; 84 S Ct 889; 11 L Ed 2d 856 (1964), wherein it was held that the hotel manager could not consent to a search of a guest's room. That person's Fourth Amendment protections were personal and could not be waived by a hotel manager. Wagner obviously "knowingly exposed" his words to the officer and the tape recorder, but Plamondon did not.[2]

Our decision not to adhere to the approach of Mr. Justice White's opinion, but rather to follow the principle of *Katz, supra,* does not in any way preclude the use by police of this important law enforcement tool. Rather, our opinion merely requires that a warrant be issued by a judicial officer after a showing of probable cause has been made. While perhaps the facts herein could support such

---

[2] *See People v Chism,* 390 Mich 104, 134–138; 211 NW2d 193 (1973), and cases cited therein, for a discussion of the problem of third-party consent to a search of jointly owned and/or jointly occupied premises. In the course of its discussion of the issue, *Chism* noted that *Hoffa, supra, Lopez, supra,* involving face-to-face encounters and the application of the "misplaced confidence" doctrine, were somewhat analogous to a joint owner/occupier consenting to a search and seizure, on the grounds that both situations included an "assumption of the risk" that the third party "would divulge the secret or property to someone else". 390 Mich at 136, fn 24.

Unlike *Lopez, supra* and *Hoffa, supra,* the instant case involves the presence of a "surreptitious third ear", 401 US at 784; 91 S Ct at 1142; 28 L Ed 2d at 477 (Harlan, J.), which had gained access to words spoken by Plamondon in his home by attaching an electronic device to a telephone receiver used by Wagner in a motel room. The instant situation, in particular the use of electronic monitoring, the lack of face-to-face encounter, and the absence of a joint owner/occupier relationship, precludes a finding that Wagner's consent to the monitoring and recording obviated the necessity of prior judicial authorization for this police procedure.

a finding, ex post facto justifications or rationales which might have supported the issuance of a warrant previous to the wiretapping, cannot be used to save the case from a finding of error. *Katz, supra,* 389 US at 356; 88 S Ct at 514; 19 L Ed 2d at 585. Because the officers failed to secure a warrant previous to engaging in this sort of activity, we find that defendants' right to be free from unreasonable searches and seizures was violated and that reversible error was committed when the tapes and transcripts of the overheard conversations were introduced into evidence.[3] Defendants are therefore entitled to a new trial.

The second claim of error contains two assertions: first, that the decision to prosecute defendants, and the manner in which the prosecution was handled, was done so with an "evil eye" and an "unequal hand", contrary to the principles of *Yick Wo v Hopkins,* 118 US 356; 6 S Ct 1064; 30 L Ed 220 (1886), and second, that defendants' rights of free speech and association, US Const, Am I and Const 1963, art 1, §§ 3 and 5, were also violated because their prosecution was politically motivated and that it had a chilling effect not only upon defendants themselves but upon their political organization as well.

Defendants' first contention is without merit. It is, of course, well established that constitutional provisions forbid discriminatory enforcement of laws and the prosecution for the alleged violations thereof. However, a violation of equal protection will not be found unless the decision to prosecute

---

[3] Our holding conflicts with that of our Court's previous cases on this issue, *supra.* However, splits of authority do arise in our Court, and one panel is not necessarily bound by the holdings of other panels. *See Miller v Midwest Foundry Corp,* 57 Mich App 761, 769; 226 NW2d 721 (1975)—proper interest amount on workmen's compensation award, *People v Pence,* 42 Mich App 215, 216–217; 201 NW2d 275 (1972)—use of juvenile record by sentencing judge.

was based upon religion, race, or some other arbitrary or invidious classification. Defendants have failed to make an affirmative showing that the decision to prosecute them was premised upon such a classification, and we must find that this part of their argument is without merit. See *Sponick v Detroit Police Department,* 49 Mich App 162, 205–206; 211 NW2d 674 (1973), and cases cited therein, and *People v Smyers,* 47 Mich App 61, 66–67; 209 NW2d 281 (1973), *lv granted,* 391 Mich 766 (1974), and cases cited therein as well. Thus, the balance of our opinion will be concerned with defendants' assertion that their rights of speech and political association were violated when they were charged with armed robbery, conspiracy to commit extortion, extortion, and conspiracy to commit criminal usury, faced trial on all but the armed robbery counts, and were convicted by the trial court, sitting without a jury, of one count of extortion by threat of accusation. MCLA 750.213; MSA 28.410.

Defendants have referred the Court to a number of Federal decisions in which courts have found discriminatory prosecutions in violation of First Amendment freedoms, and have urged that we apply the principles of those cases to the instant problem. In *United States v Crowthers,* 456 F2d 1074, 1076 (CA 4, 1972), defendants, participants in an Episcopal "Mass for peace" on the Pentagon concourse, were arrested for violating GSA regulations regarding disorderly conduct and the distribution of handbills. It was established that other religious services had been held on the concourse, and that the participants therein had not faced arrest where those services were in support of the armed forces or the health of the president. Further, there had been band recitals, a vice presiden-

tial speech, and a presentation by the West Point Choir, all of which were as loud, if not louder than the noise generated by defendants' "Mass for peace". *Crowthers* reversed defendants' convictions on the grounds that they were selectively prosecuted or subjected to the unequal and oppressive application of the regulations. 456 F2d at 1078–1079. *Crowthers* said that the government could not pick and choose between those who could demonstrate and utilize the facilities of the concourse and those who could not. Unlike defendants in *Crowthers,* defendants were not subject to the unequal or oppressive application of the extortion laws, and defendants have failed to present any evidence disclosing the state government's favorable view of some extortionists while pursuing the prosecution of instant defendants.

Likewise, *United States v McLeod,* 385 F2d 734, 739–740 (CA 5, 1967), which incidentally was premised upon 42 USC 1971 rather than the Constitution, held that the above statute was violated when voting registration volunteers in Selma, Alabama were subject to harrassment by local officials and were arrested while they were engaged in various voter registration activities. The Court found that there had been a well-established pattern of "baseless arrest", 385 F2d at 741 and, as in *Crowthers, supra,* the defendants in *McLeod* were engaged in protected First Amendment activities when they were subjected to the baseless law enforcement. Such was not the case before us.

In *United States v Steele,* 461 F2d 1148, 1150 (CA 9, 1972), four vocal and active critics of the United States government's census were arrested and prosecuted for their refusal to answer questions asked by the census taker. These persons, active in the census resistance movement in Ha-

waii, were able to establish that other persons, who also refused to answer but who were less vocal and less public in their expression of displeasure with the census, were not subjects of prosecution. Unlike defendants in *Steele,* who were able to obtain relief, defendants herein, while advocates for the legalization of marijuana and active participants in the Rainbow People's Party, were prosecuted for crimes unrelated to the exercise of their rights of free speech and association. Defendants were not prosecuted, in this case, for using, possessing, or selling marijuana, or for advocating the same, but rather were prosecuted for extortion.

In *United States v Falk,* 479 F2d 616, 619 (CA 7, 1973), a leader in the Chicago area draft resistance was subject to prosecution for failure to carry his draft card, a violation of 50 USC App 462, and his refusal to submit for induction. *Falk* noted the general rule that discriminatory prosecution based upon defendant's exercise of First Amendment freedoms is forbidden, 479 F2d at 620, and referred to the fact that defendant, contrary to established selective service policy not to prosecute those who failed to carry a draft card, was singled out for prosecution. 479 F2d at 621.

While in the instant case the Attorney General's Department was involved in the prosecution of defendants, rather than the local prosecutor, that action was justified on the grounds that there was no elected local prosecutor at the time involved in this case. Further, none of the factors discussed in *Falk* were involved in our case, and once again we must refer to the fact that defendants' acts of extortion were unrelated to any protected First Amendment activity.

In *United States v Berrigan,* 482 F2d 171, 176–

177 (CA 3, 1973), the Court found no discrimina-
tory prosecution of defendants who had sent let-
ters in and out of prison and who had been
charged with conspiracy to kidnap Henry Kis-
singer, destroy the underground heating system in
Washington, D. C., and raid draft boards. Despite
the fact that about 100 FBI agents had been
waiting outside of a church to capture the brother
of one of the defendants, that agents had engaged
in surveillance of one of the defendants and that
the director of the FBI had made public his per-
sonal views of the incident, the Court found that
defendants' activities and plans were outside the
parameters of the First Amendment and that they
failed to establish their claim of discriminatory
prosecution. 482 F2d at 177–179. Likewise, despite
the fact that the Michigan State Police and the
Attorney General's office were involved in the
prosecution of defendants, that these officers coop-
erated with the Ann Arbor police department in
the arrest of defendants, that a res gestae witness
was interviewed in Massachusetts and that an
aerial photograph was taken of the scene of the
arrest, we find that defendants' claim that they
were subject to discriminatory prosecution is with-
out merit. Although active in the Rainbow Peo-
ple's Party and advocates for a number of anti-
establishment causes, their prosecution was basi-
cally limited to a violation of the state's criminal
law prohibiting extortion, and defendants have
failed to show that other alleged extortionists with
pro-establishment viewpoints were not subjects of
prosecution.

Examination of the trial court's opinion discloses
that the trial judge acquitted defendants on a
number of charges, found them guilty only of
extortion by accusation, pointed out that the At-

torney General was needed in Benzie County due to the lack of a local elected prosecutor, noted that the Rainbow People's Party was not on trial, that the issue of marijuana was not on trial, and analyzed the specific facts involved in the case in the course of reaching his conclusions. Further, at sentencing, the trial court stated that defendants' political views had nothing to do with the sentence, and specifically said that they may engage in political activities while on probation. There is no merit to defendants' claim that they were discriminated against in this case.

Reversed and remanded for new trial pursuant to our resolution of the first issue.

D. E. HOLBROOK, JR., J., concurred.

D. E. HOLBROOK, P. J. *(dissenting)*. This writer is constrained to dissent with the majority as to the first issue only. There is no question on the law applicable to cases arising after the decision of the Supreme Court in *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975). This ruling was given prospective application only. The instant case is prior to *Beavers, supra.*

In the case of *People v Patrick,* 46 Mich App 678, 682–683; 208 NW2d 604, 606–607 (1973), this writer stated:

"Defendants first assert that the electronic tape of the conversation between defendants and Pat Bradley was an illegal search of the property of the defendants under the Fourth Amendment to the United States Constitution. They cite the case of *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), in support of their position. Generally speaking, it is impermissible for police officers to conduct an electronic surveillance, wiretap, or record a conversation of private persons without an order to do so issued from an

independent magistrate. 18 USC 2511(1); *Katz v United States, supra.* The requirement of a judicial order is not necessary where one party to the conversation consents to the interception of the conversation by police authorities, their agents, or the use of electronic equipment. *United States v White,* 401 US 745, 749; 91 S Ct 1112, 1125; 28 L Ed 2d 453, 457 (1971); 18 USC 2511(2)(c)."

This writer, being convinced that the instant case is governed by the law as stated in *Patrick,* therefore respectfully dissents, and votes for affirmance.