PEOPLE v PULLEY

1. APPEAL AND ERROR—PRESERVING ERROR—OBJECTION—BENEFIT OF DOUBT.

A defendant must specifically object to the admission of testimony to preserve the alleged error for appeal; however, the Court of Appeals prefers to resolve any doubt in the defendant's favor where it is unclear whether defendant specifically objected.

2. COURTS—PRECEDENT—PLURALITY OPINIONS.

The Michigan Court of Appeals is not bound by the reasoning of a plurality opinion of the United States Supreme Court.

3. SEARCHES AND SEIZURES—MONITORING CONVERSATION BY THIRD PARTY—WARRANT REQUIREMENT—CASE PRECEDENT—PROSPECTIVE APPLICATION.

The monitoring of a conversation by a third party, with the consent of one participant, is not subject to the requirement of a search warrant where the monitoring occurred prior to a Michigan Supreme Court decision which held that such third-party monitoring is subject to a warrant requirement, and where the decision is to be applied prospectively only.

4. CRIMINAL LAW—CONTINUANCE—ADJOURNMENT—CIVIL CASES—STATUTES.

No adjournments, continuances or delays of criminal causes shall be granted by any court except for good cause shown in the manner provided by law for adjournments, continuances and delays in civil cases (MCLA 768.2; MSA 28.1025).

5. CRIMINAL LAW—CONTINUANCE—DISCRETION.

A trial court's denial of a defendant's request for a continuance will be overturned only if it represents an abuse of discretion.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 545.
[2] 20 Am Jur 2d, Courts § 70 *et seq.*
[3] 68 Am Jur 2d, Searches and Seizures §§ 24, 61.
[4–7] 17 Am Jur 2d, Continuance §§ 4, 27.
[8, 9] 21 Am Jur 2d, Criminal Law § 585.
[10–12] 58 Am Jur 2d, New Trial § 212 *et seq.*

6. CRIMINAL LAW—CONTINUANCE—WITNESSES—COURT RULES.

A continuance to enable a defendant to procure a witness shall be granted only if the court finds that the evidence is material and that diligent efforts have been made to secure the witness (GCR 1963, 503.2).

7. CRIMINAL LAW—CONTINUANCE—WITNESSES—DISCRETION.

Denial of a defendant's request for a continuance to procure certain witnesses was not an abuse of discretion where the defendant had been out of jail for three months before trial, and he had ample opportunity to consult with his attorney on possible defenses and to collect witnesses.

8. CRIMINAL LAW—SENTENCING—PROPER CONSIDERATIONS—ALLEGED OFFENSES.

A sentencing judge may consider allegations of criminal conduct which have not resulted in conviction; however, if the defendant denies the allegations, the court may consider the alleged conduct only if presented with further information establishing the validity of the allegations.

9. CRIMINAL LAW—SENTENCING—PROPER CONSIDERATIONS—PRIOR CONVICTIONS.

Resentencing of a defendant whose presentence report listed a prior conviction which had been reversed on appeal is not required where defense counsel had notified the court of the reversal and where there is no showing that the court relied on the prior conviction or drew erroneous inferences from it.

10. NEW TRIAL—DISCRETION—CLEAR ABUSE.

The granting of a motion for a new trial lies within the sound discretion of the trial court; a defendant must demonstrate a clear abuse of that discretion to establish error.

11. CRIMINAL LAW—NEW TRIAL—RECANTING WITNESSES—AFFIDAVITS —PRISONERS.

Michigan courts are loath to grant a new trial based on recanting affidavits from a witness, particularly where the witness's change of heart occurred while he was in jail.

12. CRIMINAL LAW—NEW TRIAL—RECANTING WITNESSES—AFFIDAVITS.

Denial of a defendant's motion for a new trial based on the recanting affidavit of the prosecution's primary witness was proper where defendant presented no witnesses to support the affidavit, the recanting witness exonerated the defendant but did not implicate anyone else, it appears that all facts were fully disclosed at trial, there was no showing of a hostile motive

for the witness's initial testimony, the witness changed his mind while in jail, and the affidavit was in the form of a deposition in which the affiant was asked leading questions.

Appeal from Kent, Stuart Hoffius, J. Submitted October 10, 1975, at Grand Rapids. (Docket No. 19419.) Decided January 6, 1976. Leave to appeal denied, 396 Mich 852.

James C. Pulley was convicted of delivery of heroin. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Harold S. Sawyer,* Prosecuting Attorney, *Donald A. Johnston III,* Chief Assistant Prosecuting Attorney, and *Craig S. Neckers,* Assistant Prosecuting Attorney, for the people.

*George S. Silaski,* for defendant.

Before: N. J. KAUFMAN, P. J., and R. B. BURNS and DENEWETH,* JJ.

N. J. KAUFMAN, J. Defendant was convicted by a Kent County Circuit Court jury of the charged offense of delivery of a controlled substance, heroin, MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a). He was subsequently sentenced to a term of from 4 to 20 years and now appeals of right.

The alleged delivery of heroin occurred in the early morning hours of July 3, 1973. The purchase was made by police undercover agent Tim Kirby. At trial, Mr. Kirby testified that he was employed by the Federal Bureau of Narcotics & Dangerous Drugs and that he had worked for the agency for 2-1/2 years. In 1973 he was operating with the Grand Rapids police, and on the evening of July 2, he was searched, equipped with a body transmitter

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

and given $45 to attempt to purchase drugs. Kirby then looked for a man named "Billy" and found him at Art's Bar in Grand Rapids. The two proceeded to several addresses looking for drugs. They eventually arrived at 552 Neland, S.E., defendant's house, where "Billy" entered alone, then summoned Kirby. An unidentified man was sitting at the kitchen table, and defendant Pulley also entered the house. A portion of the substance which was sitting on the kitchen table was sold to Kirby for $45, and he was told that it was heroin. He was told that he could not leave with the heroin, and he pretended to inject part of it into his arm. He did however carry part of the substance away with him in a piece of tin foil. When the substance was later tested it was found to contain heroin, although in minimal amounts.

This testimony was corroborated by Grand Rapids police officers James Powell and James Wells. They testified that they were working with Kirby on the night of July 2, in an attempt to set up the purchase of a controlled substance. Both officers testified that they were equipped with an apparatus which could hear conversations from the transmitter that was concealed on Kirby. They stated that they had followed Kirby in separate cars as he went to four bars in search of "Billy". They saw Kirby meet a man across the street from Art's Bar and leave in his car. Both officers testified that the two men drove to four different homes where they stayed for brief periods, then proceeded to 552 Neland Street where "Billy" entered the house and then motioned Kirby inside.

Officer Powell claimed that, by means of Kirby's transmitter, he overheard conversation taking place inside the Neland Street house. He recognized Kirby's voice and heard three other, unfa-

miliar voices. Specifically, he stated that he could hear someone comment that Kirby could "purchase the whole thing for $45". It was explained that "thing" is street slang for a controlled substance, usually heroin or cocaine. Officer Wells, however, could not hear any of the discussion because of noise from outside his car.

Defendant's only defense was alibi. Several witnesses testified to the effect that Kirby did not come to the defendant's house on July 3 but had come on June 29 and that defendant was out of town on July 3. The defendant also took the stand and stated that he and several friends were at his home on June 29th or 30th when "Billy" came to the door and asked to borrow money. Tim Kirby followed shortly and appeared to be sick. They left when defendant refused to loan them any money. He stated that he was not at home on July 3.

Defendant's first claim on appeal is that the trial court erroneously admitted into evidence the testimony by Officer Powell which related the conversation overheard by means of the concealed transmitter. Defendant contends that because the monitoring was conducted without a warrant, the admission of this testimony was violative of the Michigan Constitution, art 1, § 11. Defendant cites the recent case of *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), as requiring reversal. Plaintiff argues that *Beavers,* by its own terms, is inapplicable to this case and that the proper standard is contained in *United States v White,* 401 US 745; 91 S Ct 1122; 28 L Ed 2d 453 (1971), which validates such warrantless third-party monitoring.

We find that no error was committed by admitting the challenged testimony. Initially, we note that it is unclear from the record whether defendant specifically objected to this testimony, as is

required to preserve the error for appeal. *People v Surles,* 29 Mich App 132; 185 NW2d 126 (1970), *lv den* 385 Mich 764 (1971). General objections were posed and, at one point, an off-record conference followed one such objection. In such a case, we prefer to resolve the doubt in defendant's favor and consider the appellate claim.

As plaintiff notes, *People v Beavers, supra,* which held third-party monitoring subject to the warrant requirement, is inapplicable to this case. The Court in *Beavers* explicitly stated that its "decision * * * is to be applied prospectively". 393 Mich at 568. Our Court has recently held that, inasmuch as the primary purpose of the warrant requirement is to deter unlawful police behavior, the effective date of *Beavers* is the date on which the challenged police conduct occurred, not the date of the trial. *People v Livingston,* 64 Mich App 247; 236 NW2d 63 (1975). The behavior challenged in the instant case occurred nearly two years prior to the *Beavers* decision.

In holding that the challenged behavior was not subject to the warrant requirement, we do not, as plaintiff urges, rely on *United States v White, supra.* That decision was the product of an evenly divided United States Supreme Court with the decisive vote being a concurrence in the result. As such, we are not bound by the plurality's reasoning. *People v Anderson,* 389 Mich 155, 170; 205 NW2d 461 (1973). Rather, we rely on the law in Michigan at the time the challenged activity occurred. Prior to *Beavers,* this Court consistently held the warrant requirement inapplicable to telephone conversations monitored and recorded with the consent of a participant, *People v Drielick,* 56 Mich App 664; 224 NW2d 712 (1974), *People v Rappuhn,* 55 Mich App 52; 222 NW2d 30 (1974), *lv*

*den* 393 Mich 808 (1975), *People v Karalla,* 35 Mich App 541; 192 NW2d 676 (1971), *lv den* 386 Mich 765 (1971), and to third-party monitoring of face-to-face conversations, *People v Patrick,* 46 Mich App 678; 208 NW2d 604 (1973), *People v Karalla, supra.*

We take note of a recent decision by another panel of this Court, *People v Plamondon,* 64 Mich App 413; 236 NW2d 86 (1975), which dictates the opposite result. *Plamondon,* a split decision, relying on *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), held that the warrant requirement applied to pre-*Beavers* police monitoring of a telephone call with the consent of one of the participants. The *Katz* opinion had applied the warrant requirement to police bugging of a telephone booth. It held that, because defendant had a legitimate expectation of privacy in using the booth, he was protected by the Fourth Amendment.

We could draw a distinction between this case, which, like *Beavers,* involves participant monitoring, and *Plamondon,* which involved telephonic monitoring. However, we find no justifiable basis for such a distinction. See *United States v White* (plurality), *supra, People v Livingston, supra.* Rather, we find that we must reject the reasoning and holding of *Plamondon.* First, the holding in that case represents a *de facto* retroactive application of *Beavers,* one which conflicts with its explicit prospectivity. Although *Beavers* specifically did not deal with telephonic monitoring (393 Mich at 562–563, fn 2), we find it equally applicable to such behavior. *Plamondon* relied on the same case, *Katz v United States, supra,* as did *Beavers,* which gave its application of *Katz* prospective effect.

Second, in the relevant cases cited above, this

Court consistently refused to apply *Katz* to either telephonic or participant monitoring. Thus, prior to *Beavers,* neither Michigan nor United States Supreme Court cases specifically required that a warrant be obtained. Indeed, case law was explicit in stating that no warrant need be obtained, especially in the case of participant monitoring. See *Lopez v United States,* 373 US 427; 83 S Ct 1381; 10 L Ed 2d 462 (1963). The purpose of the exclusionary rule under the Fourth Amendment and Const 1963, art 1, § 11 is one of deterring certain police conduct. *United States v Calandra,* 414 US 338; 94 S Ct 613; 38 L Ed 2d 561 (1974). The expressly prospective application of *Katz* by the Supreme Court and the consistent refusal of this Court to apply *Katz* to the instant situation make it clear to us that, prior to *Beavers,* the warrant requirement was inapplicable to participant monitoring and to third-party telephonic monitoring. It seems both fruitless and unfair to now apply the rule to police activity which has already occurred and which was conducted consistent with specific opinions of this Court, opinions which the Supreme Court has refused to retroactively overrule.[1]

In any event, if the warrant requirement had applied here, the instant factual setting would probably have fallen within the "exigent circumstances exception" to that requirement. *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971), *reh den* 404 US 874; 92 S Ct 26; 30 L Ed 2d 120 (1971), *People v White,* 392 Mich 404; 221 NW2d 357 (1974), *cert den* 420 US 912; 95 S Ct 835; 42 L Ed 2d 843 (1975). The police could not have known whom Kirby would meet or where he might buy narcotics. When he entered defend-

---

[1] It is worth noting that *Katz* itself was given prospective treatment, *Desist v United States,* 394 US 244; 89 S Ct 1030; 22 L Ed 2d 248 (1969).

ant's home, they could not have known what would transpire. Once Kirby was inside and knew of a possible purchase, there was no opportunity to obtain a warrant.

Defendant's second claim is that the trial court erred by refusing a defense request for continuance made at the start of trial. In considering such a request, MCLA 768.2; MSA 28.1025 provides in part:

"No adjournments, continuances or delays of criminal causes shall be granted by any court except for good cause shown in the manner provided by law for adjournments, continuances and delays in the trial of civil causes in courts of record".

The trial court's decision will be overturned only if it represents an abuse of discretion. *People v Carter,* 54 Mich App 69; 220 NW2d 330 (1974). Defendant claimed at trial that more time was needed to procure certain witnesses. In this regard, GCR 1963, 503.2 provides:

"A continuance shall be granted on [this] ground only if the court finds that the evidence is material and that diligent efforts have been made to secure the witness or evidence."

We find that the trial court did not abuse its discretion. Defendant had been out of jail on bail for three months before trial. He had ample opportunity to consult with his attorney on possible defenses and to collect witnesses. Additionally, all witnesses sought by defendant did testify at trial. As such, he suffered no prejudice from the court's denial. See *People v Murray,* 54 Mich App 723; 221 NW2d 468 (1974).

Third, defendant contends that the trial court

committed error, in sentencing defendant, by considering unproven allegations of criminal misconduct and a conviction which had been reversed on appeal. A judge, in determining sentence, may consider allegations of criminal conduct which have not resulted in conviction but, if the defendant denies the allegations, the court may consider the alleged conduct only if presented with further information establishing the validity of the allegations. *People v Zachery Davis,* 41 Mich App 683; 200 NW2d 779 (1972). Our review of the sentencing transcript discloses that defendant never denied the allegations, the validity of which he challenges on appeal. As such, this objection is not properly preserved.

The presentence report listed a prior conviction against defendant which had been subsequently reversed on appeal. Defense counsel, however, notified the court that the conviction had been reversed. In such a case, defendant must show that the trial court relied on the conviction despite its reversal, *People v Hildabridle,* 45 Mich App 93; 206 NW2d 216 (1973), *People v Clark,* 57 Mich App 339; 225 NW2d 758 (1975), or drew erroneous inferences from it, *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972). The trial court did, after defense counsel informed him of the reversal, refer to the conviction. He did so, however, not in reliance on the conviction but rather as an indication that defendant was familiar with the sentences possible for a conviction for delivery of heroin. Defendant presents no evidence of any reliance by the court on the prior conviction. Nor can we find from the record any reliance on the inaccurate information and, therefore, we refuse to require a resentencing.

Defendant's fourth claim of error is that the

trial court abused its discretion in failing to grant defendant a new trial. Defendant's motion for a new trial was based on an affidavit of plaintiff's primary witness, Tim Kirby. Kirby stated in the affidavit that his in-court identification of defendant was erroneous and that defendant was not present when the heroin was sold.

The granting of a motion for a new trial lies within the sound discretion of the trial court, and, to establish error, defendant must demonstrate a clear abuse of that discretion. *People v Bersine,* 48 Mich App 295; 210 NW2d 501 (1973), *lv den* 391 Mich 837 (1974). As plaintiff notes, Michigan courts have been loath to grant new trials based on recanting affidavits from witnesses. See *People v Dailey,* 6 Mich App 99; 148 NW2d 209 (1967), *People v Harris,* 31 Mich App 100; 187 NW2d 502 (1971). This is especially so where, as here, the witness's change of heart occurred while he was in jail.

Our review is hindered by the fact that defendant did not have the hearing on his motion for a new trial transcribed. The facts before us demonstrate that not only are there not present the types of facts which have traditionally supported the granting of a motion for new trial, but that there are present several circumstances which have traditionally required denial. Defendant presented no witnesses at the hearing to support the affidavit. See *People v Bersine, supra.* In his affidavit, Kirby exonerated defendant but did not implicate anyone else. *People v Bradford,* 10 Mich App 696; 160 NW2d 373 (1968).

Unlike *People v Smallwood,* 306 Mich 49; 10 NW2d 303 (1943), where a new trial was granted, it appears here that all the facts were fully disclosed at trial. Unlike *Smallwood,* there is no

showing of a hostile motive behind Kirby's initial identification of defendant. Like the witness in *People v Bradford, supra,* Kirby waited a significant time, more than a year, to recant. A reading of his affidavit makes it clear why the trial judge was not impressed. The affidavit is in the form of a deposition. The attorney questioning Kirby leads him throughout the deposition, and few of Kirby's answers appear to be his own. His reasons for recanting are nebulous at best. In such a factual setting, the trial court's denial of defendant's motion was by no means an abuse.

Affirmed.